IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BP EXPLORATION & PRODUCTION   §
INC.,                         §
                              §
            Plaintiff,        §
                              §
VS.                           §        Civ. A. H-13-3046
                              §
CASHMAN EQUIPMENT CORPORATION, §       ADMIRALTY CASE–Rule 9
LAD SERVICES OF LOUISIANA, LLC,§
AND CASHMAN EQUIPMENT CORP. AND§
LAD SERVICES, A JOINT VENTURE, §
                              §
            Defendant.        §

**OPINION AND ORDER**

The Amended Original Complaint (instrument #12) in above

referenced cause alleges (1) breach of a Master Services Contract

("MSC"), and of Work Releases pursuant to it, to provide barges,

tug boats, and other equipment to separate crude oil from water in

Plaintiff BP Exploration & Production Inc.'s ("BP's") clean-up

response to the Deepwater Horizon oil spill, (2) money had and

received, and (3) unjust enrichment and seeks to recover

approximately $12,000,000 in overpayments made to Defendants

Cashman Equipment Corporation ("Cashman"), LAD Services of

Louisiana, LLC ("LAD"), and Cashman Equipment Corp. & LAD

Services, a Joint Venture (the "Joint Venture").[1]  Pending before

---

[1] Cashman is a Massachusetts marine services company,
with its principal place of business in Massachusetts, and rents
and sells barge and marine equipment; LAD is a steel fabrication
facility specializing in fabricating vessels and a Louisiana
limited liability company with its principal place of business in
Louisiana; and Joint Venture, whose members are Cashman and LAD,
is a Louisiana joint venture.  The Court has both admiralty and
diversity jurisdiction here.

the Court is Defendant Cashman's motion for summary judgment (#86).

Specifically BP complains that the Joint Venture invoiced and received overpayments for work authorized in the July Work Releases (numbers 14-21, signed by Cashman through its General Counsel, Andrew Saunders),[2] involving the chartering of the Joint Venture's skimming barges. Under the MSC,[3] BP retained the right to pay invoices when they were received and to dispute or "contest the correctness of the amount and seek reimbursement" later. Art. 904 ("[P]ayment of any amount, including any disputed amount, by Company will not waive Company's right subsequently to contest the correctness of the amount and seek reimbursement from Contractor."). The MSC further gave BP the right to audit Defendants, which were required to maintain "complete and correct Documentation" related to all work done for BP. Arts. 23.01, 23.03. After paying Defendants more that $68 million based on Defendants' invoices, BP notified Defendants on November 1, 2011 that it would conduct an audit of the charges. That audit, according to BP, revealed millions of dollars of overcharges.

---

[2] Copies attached as Exhibit B to the Amended Original Complaint (#12-2) and as Exhibit B to Cashman's motion for summary judgment (#86-2). The July Work Releases, which lowered the rates for daily use of the barges and skimming equipment, are at the heart of the dispute here. As a principal, Cashman had the authority to contractually bind the Joint Venture.

[3] Copy attached as Exhibit A to the Amended Original Complaint (#12-1) and as Exhibit A to Cashman's motion for summary judgment (#86-1).

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the nonmovant bears the burden of proof at trial, the movant must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but does not have to, negate the elements of the nonmovant's case to prevail on summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40

F.3d 698, 712 (5th Cir. 1994). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc,*, 144 F.3d 377, 380 (5th Cir. 1998).

Conclusory allegations unsupported by evidence will not preclude summary judgment. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'" *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986). "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id., quoting Liberty Lobby*, 477 U.S. at 252. The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'" *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th

-4-

Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

Allegations in a plaintiff's complaint are not evidence. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)("[P]leadings are not summary judgment evidence."); *Johnston v. City of Houston, Tex.*, 14 F.3d 1056, 1060 (5th Cir. 1995)(for the party opposing the motion for summary judgment, "only evidence--not argument, not facts in the complaint--will satisfy' the burden."), *citing Solo Serve Corp. v. Westown Assoc.*, 929 F.2d 160, 164 (5th Cir. 1991).  The nonmovant must "go beyond the pleadings and by [his] own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001), *citing Celotex*, 477 U.S. at 324.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.  The Court may not make credibility determinations. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009), *citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007).

### Relevant Law

*MSC and Work Releases*

The MSC is a "blanket contract" that constitutes the first stage of the contractual relationship, while the work orders

for performance of specific work issued subsequently constitute the second stage.  "When the parties agreement consists of two parts-- the blanket agreement and a subsequent work order--the two must be interpreted together when determining whether maritime law governs the contractual dispute." *Dominion Exploration & Production, Inc. v. Delmar Systems, Inc.,* No. Civ. A. 07-9492, 2012 WL 6020121, at *5 n.6 (E.D. La. 2012), *citing Grand Isle Shipyard v. Seacor Marine, LLC*, 589 F.3d 778, 787 n.6 (5th Cir. 2009), and *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 315-16 (5th Cir. 1990)("If, as in this case, the contract consists of two parts, a blanket contract followed by later work orders, the two must be interpreted together in evaluating whether maritime or land law is applicable to the interpretation and enforceability of the contract's provisions.  The blanket contract is not of itself complete and calls for no specific work.  The actual contract between the parties therefore consists of the blanket agreement as modified by the later work order.").

*General Maritime Law*

The MSC at issue here provides that "to the maximum extent permissible" any dispute related to the contract "shall be governed by the general maritime laws of the United States"; where maritime law is held inapplicable by a court of competent jurisdiction, . . . "the laws of the State of Texas shall apply . . . ."  #86-1, Ex. A, arts. 24.01 and 24.03.

If an action falls within admiralty jurisdiction, federal courts apply substantive admiralty law to claims that sound in admiralty, regardless of whether jurisdiction is also  based upon

diversity, as is the case here. *See, e.g., Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 410-11 (1953)("While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined on controlling acts of Congress or by interpretive decisions of this Court."); *Thibodaux v. Atlantic Richfield Co.*, 580 F.2d 841, 846 (5th Cir. 1978)(discussing *Pope* at pp. 409-10: "The Constitution provides that Judicial Power shall extend 'to all cases of admiralty and maritime jurisdiction.'  This constitutional grant of jurisdiction has been construed to mean that general maritime law is to be placed under national control in 'its substantive as well as its procedural features. . . . ' . . . It is settled . . . that state law must yield to the needs of a uniform federal maritime system when inroads by the state cause disharmony.").  A constant, fundamental premise of Supreme Court opinions "is that the uniformity of admiralty law must be preserved and that state law may be applied only where it works no 'material prejudice to the essential features of the general maritime law.'  That uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction." *Green v. Vermillion Corp.*, 144 F.3d 332, 240-41 (5th Cir. 1998), *citing* John *Baizley Iron Works v. Span*, 281 U.S. 222 (1930), and Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 6-58 to 6-61 (2d ed. 1975); *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings*, 129 Fed. Appx. 45, No. 04-300003, 2005 WL 408144, at *7 (5th Cir. Feb. 22, 2005).

In *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864-65 (1986)(citations omitted), the United States Supreme Court explained,

> With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies. Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules.

The Fifth Circuit opined in *McBride v. Estis Well Serv., LLC*, 731 F.3d 505, 50708 (5th Cir. 2013), *on rehearing en banc*, 768 F.3d 382, 405 (5th Cir. 2014), *cert. denied* 135 S. Ct. 2310 (2015),

> There are two primary sources of federal maritime law: common law developed by federal courts exercising the maritime authority conferred on them by the Admiralty Clause of the Constitution ("general maritime law"), and statutory law enacted by Congress exercising its authority under the Admiralty Clause and the Commerce Clause ("statutory maritime law").

Although Congress is authorized to pass laws regarding maritime activities, a significant part of substantive maritime law has come from common law principles of the Supreme Court and "States can no more override such judicial rules validly fashioned than they can override Acts of Congress." *Wilburn Boat Co. v. Firemen's Fund Ins. Co.*, 340 U.S. 310, 314 (1955). There is no dispute among the parties that the contract at issue here is a maritime contract and the Court agrees. Whether a contract is a maritime contract is determined by its nature and character, not by its place of execution or performance. *N. Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 223 (1919). "[T]he true

-8-

criterion is whether the contract has "reference to maritime service of maritime transactions." *Id.* "A contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment is subject to maritime law." *Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1991), *quoting* E. Jhirad, A. Sann, B. Chase & M. Chynsky, *Benedict on Admiralty* § 182 (1988). "When interpreting maritime contracts, federal admiralty law rather than state law applies." *International Marine, LLC v. Delta Towing, LLC*, 704 F.3d 350, 354 (5th Cir. 2013), *citing Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 987 (5th Cir. 1986)(collecting citations). In addition to the choice of law provision, the MSC and Work Releases deal with the chartering of vessels and equipment from Defendants, their use on those vessels in the Gulf of Mexico to clean up the oil spill, and the billing for these services. *See, e.g., In re: Oil Spill by Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2011*, No. MDL 2179, 2011l WL 4574696 (E.D. La. Sept. 30, 2011)(holding that general maritime law preempts state law). "It is well established that a charter agreement is a maritime contract." *Morewood v. Enequist*, 64 U.S. 491 (1860).

When interpreting a maritime contract, the court applies the general ordinary rules of contract construction and interpretation.[4]   *Marine Overseas Servs., Inc. v. Crossocean*

---

[4] *See, e.g., Nexen Petroleum U.S.A., Inc. v. Sea Mar. Div. of Pool Well Services Co.*, Civ. A. No. 06-3043, 2007 WL 2811001, at *4 (E.D. La. Sept. 25, 2007), in which the court stated,

*Shipping Co.*, 791 F.3d 1227, 1234 (5th Cir. 1986); *Stoot v. Fluor*, 851 F.2d at 1517; *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986)("the construction of a maritime contract is governed by maritime law").

     "When interpreting a maritime contract, general principles of contract law apply from federal admiralty law, rather than from state law." *International Marine, L.L.C. v. FDT, L.L.C.*, ___ Fed. Apps. ___, No. 14-31192, 2015 WL 4720257, at *5 (5th Cir. Aug. 10, 2015), *citing Har-Win, Inc. v. Consol. Grain & Barge Co.*, 794 F.2d 985, 986-87 (5th Cir. 1986). "'Applying federal law in the contract context includes looking to 'principles of general contract law' that can be found in treatises or restatements of the law.'" *Id., quoting Univ. of Tex. Sys. v. United States*, 759 F.3d 437, 443 (5th Cir. 2014)(in turn *quoting Franconia Assocs. v. United States*, 536 U.S. 129, 141-42 (2002)), *cert. denied*, 135 S.Ct. 1894 (2015). In admiralty actions under federal common law the choice

---

       Courts interpret maritime contracts, as they do other contracts, by looking first to the intent of the parties as expressed by the terms of the agreement. *See, e.g., Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986)(reaffirming that courts should look first to the expressed intent of the parties when interpreting indemnity clauses); *see also 22* Williston on Contracts § 58:9 (4th ed. A maritime contract "should be read as a whole, and a court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous." *Fontenot*, 791 F.2d at 1214. If the language is ambiguous, a court may consider extrinsic evidence to determine the intention of the parties at the time of the contract. *Atlantic Lines, Ltd. v. Narwhal, Ltd.*, 514 F.2d 726, 730 (5th Cir. 1975).

of law is determined in accordance with the *Restatement (Second) of Conflicts of Laws.*   *In re ATP Oil & Gas Corp.*, 531 B.R. 694, (Bkrtcy. S.D. Tex. 2015), *citing Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997).

Interpretation of the terms of a contract is a matter of law.  *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, 779 F.3d 345, 348 (5th Cir. 2015).  The terms of a maritime contract are given their plain meaning unless the provision is ambiguous.  *Weathersby v. Connoco Oil Co.*, 752 F.2d 953, 956 (5th Cir. 1984).  If a contract's "language as a whole is clear, explicit, and leads to no absurd consequences, and as such it can be given only one reasonable interpretation," it is not ambiguous. *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 n.6 (5th Cir. 2004).  Under federal maritime law only if the contract provision is ambiguous may a court look beyond the written language of the contract to determine the intent of the parties.  *International Marine*, 2015 WL 4720257, at *5, *citing Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332-33 (5th Cir. Unit A Aug. 1981).

General maritime law incorporates the Uniform Commercial Code.  *Clem Perrin Marine Towing, Inc. v. Panama Canal Co.*, 730 F.2d 186, 189 (5th Cir.)(the "U.C.C. has been regarded as a source for both admiralty and federal common law"), *cert. denied*, 469 U.S. 1037 (1984).  The same is true of the Restatements of Contracts. *See, e.g., International Marine, LLC v. Delta Towing, LLC*, 704 F.3d at 354; *One Beacon Ins. Co. v. Crowley Marine Services, Inc.*, 648 F.3d 258, 265 (5th Cir. 2011); *Sea Byte, Inc. v. Hudson Marine*

*Management Services, Inc.*, 565 F.3d 1293, 1302 (11th Cir. 2009); *Doucette v. Vincent*, 194 F.2d 834, 838-39 (1st Cir. 1952).

"Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable."; "'where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law.'" *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir. 2009)(*quoting Stoot v. Fluor*, 851 F.2d 1514, 1517 (5th Cir. 1988)). Here the choice of law clause selects general maritime law, with Texas law to be applied for any matters not covered by general maritime law.[5]

---

[5] It is unclear whether there is a sufficiently substantial relationship here with Texas to support the contract's "fall back" choice of its law. Although none of the parties is a citizen of Texas, the MSC provided that venue would be exclusively in the federal district court in Harris County, Texas and that the parties agreed to submit to personal jurisdiction there.

BP's complaint seeks its reasonable and necessary attorney's fees and costs under § 18.01 of the MSC and Texas Civil Practice & Remedies Code § 38.001. Under general maritime law a prevailing party is not entitled to recover attorney's fees absent some statutory authorization or contractual provision. *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724, 730 (5th Cir. 1980). *See also Natco Ltd. Partnership v. Moran Towing*, 267 F.3d 1190, 119 (11th Cir. 2001)("Attorneys' fees generally are not recoverable in admiralty unless (1) they are provided by the statute governing the claim, (2) the nonprevailing party acted in bad faith in the course of the litigation, or (3) there is a contract providing for the indemnification of attorneys' fees."(*citing Noritake*, at 730-31 & n.5); *Texas A&M Research Foundation v. Magna Transp., Inc .*, 338 F.3d 394, 405 (5th Cir. 2003)(holding that "the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes, such as [Texas Civ. Prac. & Rem. Code] § 38.001, to maritime contract disputes")("Maritime disputes generally are governed by the 'American Rule,' pursuant to which

*Liability of a Louisiana Joint Venture Under Louisiana Law*

Cashman argues that Louisiana substantive and procedural law applies here, while BP contends that federal maritime or, where there is none, Texas substantive and procedural law applies.

Courts in Louisiana look to the laws of partnership when they determine whether the parties have created a joint venture. *Transit Management of Southeast Louisiana, Inc. v. Group Ins. Admin., Inc.*, 226 F.3d 376, 383 (5th Cir. 2000)("Under Louisiana jurisprudence the fundamental elements of a joint venture are generally the same as those of partnership, and, accordingly, joint ventures are governed by the law of partnership."); *Brees v. Houser*, No. Civ. A. 13-4760, 2014 WL 3587333, at *7 (E.D. La. July 21, 2014).  A partnership is defined "'as a 'juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.'''" *Brees*, 2014 WL 3587333, at *7, *quoting Lang v. Sproull*, 36 So.3d 407, 412 (La. App. 2 Cir. 2010),

---

each party bears its own costs.  Therefore, 'absent statute or enforceable contract, litigants must pay their own attorneys' fees.").  Under Texas law also, a plaintiff can recover attorney's fees only if specifically provided for by statute or contract. *Epps v. Fowler*, 351 S.W. 3d 862, 865 (Tex. 2011), *citing Intercontinental Grp. P'ship v. KB Home Lone Start, LP*, 295 W.W. 3d 650, 653 (Tex. 2009).

Here, the contract in § 18.01 (If Contractor fails to perform the work properly, Company may terminate the contract and "have all other rights or remedies available to it by law, including, but not limited to, the right to demand specific performance and/or seek damages for breach, including attorneys' fees and costs.") does provide for recovery of attorney's fees. So regardless of which law applies, BP has asserted a viable claim for fees.

quoting La. Civ. Code Ann. art. 2801.[6]   A written agreement is not required to prove the existence of a joint venture, but a plaintiff has the burden of establishing that "'(1) the alleged partners mutually agreed to form a partnership and to participate in the profits which would accrue from the business in determined proportions; (2) they agreed to share in the losses as well as the profits of the partnership; and (3) the property or stock of the enterprise formed a community of goods in which each party has a proprietary interest,'"   *Id.* at *8, *quoting Porter v. Porter*, 821 So. 2d 663, 671 (La. App. 2 Cir. 2002).

"A partnership has the procedural capacity to be sued in its partnership name.   The partners of an existing partnership may not be sued on a partnership obligation unless the partnership is joined as a defendant."   Louisiana Code of Civil Procedure Art. 737;   *Casten v. Cordell*, 649 So.3d 123, 126 (La. App. 2 Cir. 1995)(the partnership is an indispensable party), *citing* Louisiana Code of Civil Procedure art. 737.   The partnership is the primary obligor.   La. Civ. Code Art. 2817. *Travelers Ins. Co. v. St. Jude Hospital of Kenner, Louisiana*, 73 F.3d 193,  195-96 (5th Cir. 1994).

Louisiana has a unique method of limiting a general partner's liability for debt to third parties.   Under Louisiana Civil Code Annotated article 2817, "A partner is [secondarily] bound for his virile share of the debts of the partnership."

---

[6] Partnerships are different from joint ventures in that a partnership's members usually "share in the responsibility for the general operations of an organization," while a joint venture is "'usually but not necessarily limited to a single transaction.'"   *Id., citing Smith v. Scott,* 655 So. 2d 582 (La. App. 2 Cir.), *writ denied*, 660 So.2d 475 (La. 1995).

*Brees*, 2014 WL 3587333, at *7. "Virile share" in article 2817 means "per head liability among partners of a general partnership"; each joint obligor owes an equal share of the debt, which is calculated by dividing the amount owed by the number of obligors.  *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 99 and nn.4 and 5 (Aug. 5, 1993), *as clarified on denial of rehearing* (Sept. 15, 1993).  As explained in 7 Glenn G. Morris and Wendell H. Holmes, Louisiana Civil Law Treatise § 2.10 ("Meaning of 'virile share'")(database updated June 2015),

> Although the issue is not free of doubt, the term "virile share" in article 2817 of the Civil Code appears to mean "a proportionate share, based on the number of liable partners in the partnership."  Under this view, each liable partner owes an equal share of the partnership debt to the third party creditor, regardless of the size of the partner's capital contribution, and regardless of the share of profits and losses that the partnership agreement says he is to hold.[7]

---

[7] Article 2817 states in its entirety, "A partnership as principal obligor is primarily liable for its debts.  A partner is bound for his virile share of the debts of the partnership but may plead [the affirmative defense of] discussion of the assets of the partnership."  1980 Revision Comment (a) states in relevant part, "This article sets forth the rule that creditors must look to the partnership first for the debt of the partnership.  The partners are only secondarily liable."  Article 2817 "adds a new provision to the effect that if a partner is sued on a partnership debt, the partner may plead discussion of the partnership's assets.  A third person may sue the partnership and partners at the same time, as provided in Article 737 of the Louisiana Code of Civil Procedure, but can recover against a partner who has properly pleaded discussion only if the partnership's assets have been dissolved. By requiring the partner to plead discussion in order to get the benefit of having the assets of the partnership exhausted before there can be recovery against him, the article in fairness to creditors, places the burden of pointing out partnership property on the partner."  Revision Comment (c) further explains that article 2817 is a new rule:

*Id., citing Hibernia Nat. Bank* (one of eight partners owed partnership creditor one-eighth, i.e., 12.5%, of partnership's debt even though he held only a 5% interest in the partnership). Furthermore, *id.* at § 2.11 ("Effects of virile share rule"),

> Once [a partner] pays his own proportionate part of the partnership's debts, his obligation is satisfied. Even if the partnership is incapable of paying the remaining portion of its own debts, and even if the other partners are incapable of paying their own respective shares of those debts, Louisiana law limits any given partner's liability strictly to the amount necessary to pay his own proportionate share of the partnership debts. Any remaining loss must be borne by the partnership's creditors, and not by the other partners--even if financially comfortable--who have already paid their own proportionate part of the partnership's debts.

Because under Louisiana law partners are only secondarily liable for the debts of the partnership, article 2817 permits them to plead the affirmative defense of "discussion" of the partnership's assets. "Discussion is the right of a secondary obligor to compel the creditor to enforce the obligation against

---

> Prior law distinguished the liability of a member of an ordinary partnership from the liability of a member of a commercial partnership. A partner of an ordinary partnership had virile share liability, whereas a partner of a commercial partnership had solidary liability. Under the new law, there is no distinction between commercial and ordinary partnerships, and solidary liability has been suppressed, so that in all partnerships, each partner is liable only for his virile share.

"A 'Solidary obligation' corresponds to a 'joint and several' obligation in the common law; that is, one for which several debtors are bound in such wise that each is liable for the entire amount, and not merely for his proportionate share." *Black's Law Dictionary* at p. 1393 (6th ed. West 1990).

the property of the primary obligor . . . before enforcing it against the property of the secondary obligor." La. Civ. Proc. art. 5151. *See, e.g., Nichols v. Pipes*, 353 So.2d 1086, 1087 (La. App. 1977)(Creditor can join the surety with the principal debtor and obtain judgment against both, but only requires that any judgment in the suit be executed first against the principal debtor)(*citing* Louisiana Civil Code art. 2051 and Louisiana Code of Civil Procedure arts. 5151-5156), *writ denied*, 355 So.2d 264 (La. Feb. 24, 1978).

On the other hand, while the partnership must be sued first, either by itself or along with partners, the partners may be sued individually subsequently, even though it may be more economical and expedient to have joined the partners in the first suit, as long as the partnership was found liable in the first suit. *See, e.g., F.D.I.C. v. Mmahat*, 960 F.2d 1325, 1329-30 (5th Cir. 1992)(finding subsequent suit against a partner individually and as a secondary obligor was not barred by *res judicata* because it was a suit to collect on an earlier judgment against the partnership as primary obligor), *cert. denied sub nom. Duffy v. F.D.I.C.*, 506 U.S. 1078 (1993). As the Fifth Circuit opined, *id.* at *1328-29,

> Neither federal nor Louisiana law requires the joinder of all partners in an action against a partnership. *See* 7 Charles A. Wright, Arthur Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1623 (2d ed. 1986)(joinder unnecessary for partners who are jointly and severally liable); *Koppers Co. v. Mackie Roofing & Sheet Metal Works*, 544 So.2d 25, 26 (La. App. 1989)(The purpose of La. Code Civ. P. art. 737 is not to "make it mandatory that the partners be named as defendants every time

-17-

a partnership it sued"; rather its purpose is to require a partnership creditor first to "exhaust his rights against the partnership before he proceeds against the individual partners.") . . . . *See generally Restatement (Second) of Judgments* § 60 (1982)(a successful lawsuit against one partner does not bar subsequent lawsuits against other partners individually on the same debt); 7 *Federal Practice and Procedure* § 613 at 196 n.32 (noting that Official Comment to the Uniform Partnership Act § 15 recognizes that under some state partnership laws, "the partnership may be sued in the partnership name and thereafter the partners separately until satisfaction is had"). Under the Louisiana law of partnerships, each partner is secondarily liable for his virile share of the partnership debts. *See* La. Civ. Code Art. 2817.

Where, as a secondary obligor, a member of a partnership or joint venture pleads discussion, the secondary obligor is required under Louisiana Civil Procedure Code art. 5155 to

(1) Point out by a description sufficient to identify it, property in the state belonging to the primary obligor, or otherwise subject to discussion, which is not in litigation, is not exempt from seizure, is free of mortgages and privileges, and is worth more than the total amount of the judgment or mortgage; and

(2) Deposit into the registry of the court, for the use of the creditor, an amount sufficient to defray the costs of executing the judgment or enforce the mortgage against the property discussed.

*Hibernia Nat. Bank*, 997 F.2d at 101-02. Furthermore, where the party pleading discussion did not comply with these requirements, the Court need not address the plea of discussion on the its merits. *Travelers Insurance Co. v. St. Jude Hosp. of Kenner, La.*, No. Civ. A. 93-0173, 1993 WL 408337, at *3 (E.D. La. Sept. 30,

-18-

1993), *citing Thompson-Ritchie Grocery Co. v. Cary* , 17 La. App. 270, 135 So. 707 (1931).

Cashman's alleged affirmative defense of discussion (Cashman's Second Supplemental and Amended Answer, Affirmative Defenses and Counterclaim, attachment to #73, ¶ 94) asserts the following:

> . . . BP as Plaintiff, must first pursue its legal remedies against Joint Venture as required by Louisiana law, which is the law applicable to claims alleged, or that might be alleged against Cashman as a party to a Louisiana Joint Venture. BP and Joint Venture were the only parties to the contract made the basis of plaintiff's claims in this case. Cashman signed the contract as a representative of Joint Venture and not as an individual party. From the document alleged by Plaintiff to constitute the contract under which Plaintiff has brought its claims it is clear that Joint Venture was the contracting party and any document signed by Cashman, or otherwise sent by Cashman to BP, was as a representative of Joint Venture. Cashman specifically denies that it was a party to said contract and Cashman cannot be sued by Plaintiff for contract claims under a contract to which Cashman was not a party. Cashman has no liability for any of the claims alleged by Plaintiff and any alleged claim Plaintiff may bring against Cashman for the debts of the Joint Venture is limited under Louisiana law to a claim for Cashman's virile share of any alleged Joint Venture debt.

*Texas Law Regarding Joint Ventures*

As with Louisiana law, joint ventures under Texas law are treated similarly to the way partnerships are treated under that state's law. *McCabe v. Henpil, Inc.*, 889 F. Supp. 983, 993 (E.D. Tex. 1995), *citing Brazosport Bank v. Oak Park Townhouses*, 889 S.W. 2d 676, 683 (Tex. App.--Houston [14th Dist.] 1994, writ denied). *See also* 1 Tex. Guide Bus. & Com. Litigation, "Definition of

partnership-Joint Venture" § 1:2 (updated June 2015)("The legal distinctions between partnerships and joint ventures have virtually disappeared. *Sims v. Western Waste Industries*, 918 S.W. 2d 682 (Tex. App.--Beaumont 1996, writ denied). As a result, joint ventures are now governed by the same legal principles as partnerships. *626 Joint Venture v. Spinks*, 873 S.W. 2d 73 (Tex. App.-Austin 1993, no writ); *McCabe v. Henpil, Inc.*, 889 F. Supp. 983 (E.D. Tex. 1995). The Texas Revised Partnership Act includes joint venture within the definition of partnership. Tex. Rev. Civ. Stat. Ann. 6132b-2.02.").

Under Texas law, in contrast to Louisiana law, however, a joint venturer is "jointly and severally liable for joint venture debts and obligations." *Id., citing Truly v. Austin*, 744 S.W. 2d 934, 937 (1988), *citing* Tex. Rev. Civ. Stat. Ann, art. 6132b, § 15 (Vernon 1970). Similarly under traditional general partnership law, each partner is liable jointly and severally for the liabilities of the partnership. *Pinebrook Properties, Ltd. v. Brookhaven Lake Property Owners Assoc.*, 77 S.W.3d 487, 499 (Tex. App.--Texarkana 2002); *Crop Production Services, Inc. v. Keeley*, 2015 WL 4885345, at *3 (E.D. Tex. Aug. 14, 2015). See Tex. Bus. Orgs. Code § 152.304(a)("Except as provided by Subsection (b) or Section 152.801(a) [addressing limited liability partnerships], all partners are jointly and severally liable for all obligation of the partnership unless otherwise: (1) agreed to by the claimant; or (2) provided by law."

"Under the common law also, 'parties having a joint and several obligation are bound jointly as one party, and also

-20-

severally as separate parties as the same time.'"   12 Williston on Contracts § 36:1 (4th ed. 1999).  *International Marine, LLC v. Delta Towing LLC*, 2013 WL 5890551, at *4 (E.D. La. Nov. 1, 2013).  *Texas Common Law Claims*

A cause of action for money had and received "'is an equitable  doctrine applied to prevent unjust enrichment.'" *Berryman's South Fork, Inc. v. J. Baxter Brinkmann Intern. Corp.*, 418 S.W. 3d 172, 189 (Tex. App.--Dallas 2013, rev. denied), *quoting MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W. 3d 808, 813 (Tex. App.--Dallas 2012, no pet.).  It is "a category of general assumpsit to restore money where equity and good conscience require refund.  *Id., citing id.*  It is not based on wrongdoing but "'looks only to the justice of the case and inquires whether the defendant has received money which rightfully belongs to another.'"   *Id., quoting id.*  A plaintiff must merely prove that the defendant possesses money which in equity and good conscience belongs to the plaintiff.  *Id., citing id.*  Courts use the term, "money had and received," interchangeably with terms for similar claims, e.g., assumpsit, unjust enrichment, and restitution.  *H.E.B., L.L.C. v. Ardinger*, 369 S.W. 3d 496, 507 (Tex. App.--Fort Worth 2012), *citing Edwards v. Mid-Continent Office Distributors, L.P.*, 252 S.W. 3 833, 837 n.7 (Tex. App.--Dallas 2008, rev. denied).  *See Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004)(Money had and received "is an equitable doctrine applied to prevent unjust enrichment" under Texas law.).

Texas courts are in conflict about whether there is an independent cuase of action for unjust enrichment under Texas law.

-21-

*Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 746 (W.D. Tex. 2014). "'Despite the lack of unanimity among Texas courts, one thing remains clear:  even in the cases [suggesting unjust enrichment is not an independent cause of action,] the courts have still allowed plaintiffs to recover based on the *theory* of unjust enrichment so long as a 'person has obtained a benefit from another by fraud, duress, or the taking of undue advantage.'" *Id., quoting Newington Ltd. v. Forrester*, No. 3:08-CV-0864-G, 2008 WL 4908200, at *4 (N.D. Tex. Nov. 13, 2008), in turn      *quoting Baisden v. I'm Ready Prods., Inc.*, No. H-08-0451, 2009 WL 2118170 at *10 (S.D. Tex. May 16, 2008).  Unjust enrichment occurs when a person has wrongfully obtained a benefit or has passively received one which it would be unconscionable to retain.  *Stewart Title Guar. Co. v. Mims*, 405 S.W. 3d 319, 339 (Tex. App.-Dallas 2013, no pet.).

        Usually if a valid, express contract exists covering the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory such as unjust enrichment or quantum meruit.  *City of The Colony v. North Texas Mun. Water Dist.*, 272 S.W. 3d 699, 731 (Tex. App.--Fort Worth 2008); *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 698-99 (S.D. Tex. 2014).  An exception to this rule arises when overpayment is made under a valid contract.  *Id. and id., citing Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W. 2d 467, 469-70 (Tex. 1998)("in some circumstances overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment"), in turn citing the following *inter alia*:  *Bowers v. Missouri, Kan. & Tex.*

*Ry. Co.*, 241 S.W. 509, 510-11 (Tex. App.--Texarkana 1922, no writ)(allowing restitution for freight charges paid in excess of rates specified in shipping contract); *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31-33 (5 $^{th}$ Cir. 1963)(holding that plaintiff could recover money mistakenly paid in excess of contract price); *Natural Gas Pipeline Co. v. Harrington*, 246 F.2d 915, 921 (5th Cir. 1957)(holding that gas company was entitled to restitution of difference between contract rate and price paid under invalid rate order set by regulatory board).

### Cashman's Motion for Summary Judgment (#86)

Cashman argues first that it cannot be liable for breach of contract, unjust enrichment and/or money had and received because there is no privity of contract between BP and itself. Cashman insists that the Joint Venture, not Cashman, entered into the MSC with BP.

As noted, under Louisiana law, a joint venture member is only liable for its virile share of the joint venture's debts and only in a secondary capacity. Louisiana Civil Code art. 2817. Cashman claims that BP is suing Cashman directly and not in a secondary capacity, so the claims against it should be dismissed. In Defendants' Second and Supplemental Amended Answers (copies attached to their motions for leave to file: #72 (LAD), #73 (Cashman), and #74 (Joint Venture"), respectively), Defendants each asserted an affirmative defense of discussion, i.e., the right under Louisiana Code of Civil Procedure Art. 5151 "of a secondary obligor to compel the creditor to enforce the obligation against the property of the primary obligor," which in the case of a joint

venture is the joint venture itself, "before enforcing it against
the property of the secondary obligor." *Id.*, art. 2817.  Although
BP originally objected to the motion for leave to add the
affirmative defense of discussion, it subsequently withdrew that
objection while reaffirming its intent to hold Cashman and LAD
liable in all capacities for the damages alleged in BP's complaint.
#87 at p. 1.  Magistrate Judge Stacy granted in part the three
Defendants' motions for leave to file their affirmative defenses of
discussion, but denied them as to affirmative defenses or
counterclaims based on "set-off" since the latter were precluded by
the Deepwater Horizon Settlement Agreement.   #96.

In support of its argument that BP contracted with the
Joint Venture only, Cashman first points to the title of the MSC:

MASTER SERVICE CONTRACT
BETWEEN
BP EXPLORATION & PRODUCTION, INC.
AND
CASHMAN EQUIPMENT CORP.
AND
LAD SERVICES, A JOINT VENTURE.

#86, Ex. A, p. 2.[8]

Cashman notes that the same delineation appears in the
preamble.  #86, Ex. A, p. 4.

---

[8] BP insists this argument fails because the contract at
§ 1.08 clearly and unambiguously states, "Headings are used for
convenience only and will not affect the construction or validity
of this contract."  *See also Sanchez v. Verio, Inc.*, 119 Fed.
Appx. 616, 621 n.8 (5th Cir. 2004)(recognizing that it is proper
to ignore "title headings" where the contract provides that
"captions used in the . . . Agreement are inserted for convenience
and shall not be deemed a part of the [Agreement] for construction
or interpretation.").  The Court agrees with BP that Cashman's
argument on this point and ignores the headings in determining
whether only the Joint Venture is a party to the contract with BP.

The preamble of the MSC provides in pertinent part:

THIS CONTRACT is made . . . by and between BP EXPLORATION & PRODUCTION INC. (either is hereinafter referred to as "Company"), having an office at 501 WestLake park Boulevard, Houston, Texas 77079, and Cashman Equipment Corp. and LAD Services, a Joint Venture. Cashman Equipment Corp. having its principal office at 161 Granite Avenue, Boston, Massachusetts 02125 and LAD Services having its principal office at 1043 Stephenville Road, Stephenville, Louisiana (Hereinafter referred to as "Contractor"). The entity under this Contract acting as Company shall be determined by the ownership interest in the respective assets which are the subject of the services under this Contract at any given time; provided, however, in the event that no services are in progress, or other issues of Contract arise which do not pertain to one or the other entity, then both entities of Company shall act as Company. Company and Contractor may hereinafter be referred to collectively as "Parties" or individually as a "Party." . . .

Cashman argues that the MSC individually identifies the Joint Venture as a "Party," and the MSC collectively identifies BP and Joint Venture as the "Parties." *Id.*; preamble and § 2.08 ("'<u>Contractor</u>' shall refer to the Party designated in the preamble to this Contract.") and § 2.22 ("'Party" or 'Parties' shall have the meaning set out in the preamble to this Contract.").

Cashman further emphasizes that the representatives of the Joint Venture partners, Cashman and LAD, simultaneously executed the MSC on Joint Venture's behalf on May 26, 2010 at 11:03 p.m. *Id.* at p. 27.

Cashman additionally claims that the Work Releases also reflect that BP's contract is with the Joint Venture, not with Cashman, in describing the parties as "BP Exploration & Production

-25-

Inc. and Cashman Equipment/LAD Services of Louisiana JV." Ex. B at front page of each Work Release. [9] They, too, identify Joint Venture as "Contractor." *Id.* Within each Work Release   the identification of "Contractor" distinguishes the two business organizations:  Joint Venture Cashman Equipment/LAD Services of Louisiana JV is differentiated from Cashman Corp. *Id.*

Moreover Cashman points out that the Joint Venture is a Louisiana entity governed by Louisiana law.  The MSC provides an election of maritime law or Texas law to govern a contract dispute (#86-1, Ex. A, arts. 24.01 and 24.03).  Cashman contends that since Cashman is not a party to the MSC, it therefore is not bound by the MSC's choice of law provision.  Furthermore article 2817 requires

---

[9] BP disagrees.  The contract contemplates that BP and "Contractor" will **subsequently** enter into Work Releases to govern specific oil skimming work to be performed by "Contractor" in the Gulf of Mexico.  The MSC in § 1.04 ("In the event of any conflict, inconsistency, or ambiguity between the Articles of this Contract and any of the Exhibits referred to above, the Articles shall prevail.") provides that the Work Releases are governed by the Contract and that they cannot cause any contractual text to be ambiguous.  Furthermore, the Contract's merger clause, §§ 28.01-.02, states in part, "No other contract or agreement, whether executed prior or subsequent to the execution of this Contract, will in any way modify, amend, alter, or change any of the terms or conditions set out herein unless such contract or agreement . . . . clearly expresses the specific intention of the Parties to amend this Contract by making specific reference thereto."  All the Work Releases in dispute were entered into over two months after the MSC was executed and expressly recognize that they are controlled by the Contract and expressly disclaim any intention to amend it:  "This Work Release is subject to the terms and conditions of Master Service Contract . . . . NOTHING CONTAINED IN THIS WORK RELEASE SHALL BE CONSTRUED AS AN AMENDMENT TO THE TERMS OF THE REFERENCED MASTER SERVICE CONTRACT."  #8-2, Ex. B.  Thus the Work Releases cannot be used to construe the Contract's definition of "contractor" despite Cashman's request that the Court follow the Work Releases rather than the Contract in construing the definition.  Furthermore, argues BP, Cashman's approach would render multiple provisions of the MSC meaningless. Here, too, the Court agrees with BP.

a partnership creditor to exhaust its right against the partnership before proceeding against the individual partners, who are only secondarily liable and only to the extent of their virile or proportionate shares.

Thus Cashman concludes that since it is not a party and is not in privity with BP, BP cannot enforce the contract against Cashman. *Crabtree v. Tristar Auto Group, Inc.*, 776 F. Supp. 155, 166 (S.D.N.Y. 1991), *citing* 2 *Williston on Contracts* §§ 273, 347 at 178-80, 793 (3d ed. 1959 & 1983 Supp.).  Contracts do not place obligations on non-parties.  *Puerto Rico Marine Mgmt., Inc. v. Ken Penn Amusement, Inc.*, 574 F. Supp. 563, 566 (W.D. Pa. 1983).

Furthermore as a matter of law where there is an actual contract, argues Cashman, there can be no quasi-contractual claims, even where the contractual remedy is against a third party.  *U.S. v. Bollinger Shipyards, Inc.*, Civ. A. 12-920, 2013 WL 393037 (E.D. La. Jan. 20, 2013)(dismissing unjust enrichment claim based on the existence of a contract, which gave the claimant a contractual remedy against a third party).[10]  Thus BP's breach of contract claim

---

[10] Under Louisiana Civil Code art. 2298, "A person who has been enriched without cause at the expense of another person is bound to compensate that person," but "[t]he remedy . . . is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule." Because BP has sued for breach of contract for any damages it incurred during the time the contract was still in effect, Cashman contends that BP cannot maintain a case of action for unjust enrichment during that same time. *Ferrara Fire Apparatus, Inc. v. JLG Industries, Inc.*, 581 Fed. Appx. 440, 443-44 (5th Cir. Sept. 9, 2014).

The Court notes BP, which contends that the individual members of the Joint Venture are bound by the MSC, has pleaded these claims under Texas law.  The answer depends on whether the MSC is binding on Cashman and LAD in their personal capacities.

precludes its two quasi-contractual claims against any of the Defendants.  BP is wrong in insisting it has breach of contract and quasi contract claims (unjust enrichment and money had and received[11]) against Cashman directly and not in a secondary capacity.  Louisiana joint venture law mandates that Cashman is entitled to dismissal because only the joint venture has primary liability.  Cashman insists that it is liable only for its 50% virile share of the Joint Venture's debts and only in a secondary capacity.

In sum, Cashman is entitled to summary judgment on all BP's claims.  It is not liable for breach of contract because it is a non-party to the MSC and the Work Releases.  BP's contractual claim against the Joint Venture bars BP's quasi-contractual claims against Cashman for unjust enrichment and money had and received. Last, as a matter of law, a member of a joint venture has no primary liability for the debts of a joint venture and BP has sued Cashman only in a primary capacity, so the claims must be dismissed.

---

[11] Louisiana Civil Code art. 2299 provides, "A person who has received a payment for a thing not owed to him is bound to restore it to the person from whom he received it."  Unlike unjust enrichment and contrary to Cashman's claims, the Revision Comment (c) to article 2299 states,

> The remedy that Article 2299 provides is not subsidiary; this remedy is available even if other remedies are also available but there can be no double recovery.

"[T]he right to reimbursement conferred by article 2299 exists regardless of whether such payment was made knowingly or through error."  *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 273 (5th Cir. 2003).

**BP's Response (#91)**

          Contending that the motion for summary judgment should be
denied, BP responds that Cashman is a party to and a signatory of
the MSC for its breach of contract claim, and thus in privity with
BP.  BP further argues that Cashman is a proper party for BP's
quasi-contract theory because Cashman received more than $12
million in overpayments to which it is not entitled and it is well
established that claimants may recover overpayments by asserting
quasi-contract claims even where there is a valid contract.  Last
of all, the motion should be denied because Cashman erroneously
states that BP is not pursuing damages against Cashman in all its
capacities; BP insists that it is suing Cashman in all its
capacities (regardless of whether it is characterized as "direct,"
"primary," "secondary," or other), including, if necessary, in its
capacity as a secondary obligor.  Regardless, as a member of the
Joint Venture, Cashman is jointly liable for the debts of the Joint
Venture even if it is not a party to the contract.[12]

          BP notes that in determining if privity of contract
exists, courts frequently examine a contract's definitions and its
signature block.  BP insists that Cashman is expressly and
unambiguously defined as a "Contractor" in the contract.  In MSC's
second sentence, the MSC clearly and unambiguously identifies
Cashman and LAD each as a "Contractor" that assumed rights and
obligations under the contract (#86-1, Ex. A at p.1, preamble):

---

          [12] BP claims that Cashman is either jointly liable or
jointly and severally liable for damages under the applicable law
because all three defendants (the Joint Venture, Cashman, and LAD)
have been sued in this action.

> Cashman Equipment Corp. having its principal
> office at 161 Granite Avenue, Boston
> Massachusetts 02124 and LAD Services having
> its principal office at 1043 East Stephenville
> Road, Stephenville, Louisiana (hereinafter
> referred to as "Contractor.")

There is no mention of the Joint Venture or its address here.[13]

---

[13] In its reply (#95 at pp. 1-4), Cashman argues that this language is taken out of context and ignores the language immediately prior to it:

> THIS CONTRACT is made this 5th day of May 2010
> (the Effective Date) by and between BP
> EXPLORATION & PRODUCTION INC. (either is
> herein referred to as "Company"), having an
> office at 501 Westlake Park Boulevard,
> Houston, Texas 77079, and Cashman Equipment
> Corp. and Lad Services, a Joint Venture.
> Cashman Equipment Corp. having its principal
> office at 161 Granite Avenue, Boston
> Massachusetts 02124 and LAD Services having
> its principal office at 1043 East
> Stephenville Road, Stephenville, Louisiana
> (hereinafter referred to as "Contractor.").

The next portion, on which BP erroneously relies, is not even a sentence and sets out the addresses of Cashman and LAD because a Joint Venture has no separate mailing address. Unlike a partnership, a joint venture, which is "usually . . . limited to a single transaction, although the business of conducting it may continue for a number of years," under traditional common law of contracts is considered to be located where the joint venture was formed or the state where the joint venture has operative effect, here Louisiana. *Cajun Electric*, 452 So.2d at 215; *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 83 (2d Cir. 1995). Objecting to BP's conclusion that the provision of addresses for Cashman and LAD indicates they are the parties rather than the Joint Venture, the two sentences must be read together and the singular "Contractor" clearly refers back to the Joint Venture. The Work Release identifies the JV and a Louisiana JV" and the "Contractor" as "Cashman Equipment/LAD Services of Louisiana JV." #86-2. Even more persuasive, the contract's language states as to the BP entities, "either is referred to as 'Company.'" If the parties intended that there would be more than one Contractor under the Contract, they would have used this exact language. In ¶ 2.07, "Contractor again refers to "the Party," singular, designated in the preamble.

As sophisticated parties, if the parties wished to identify the Joint Venture as a "Contractor," they would have expressly stated that the "Contractor" is "Cashman Equipment Corp. and LAD Services, a Joint Venture," and provided its address.  The "Contractor" is BP's direct counterparty under §§ 2.28, 3.01, and 5.01 of the Contract in that the Contractor is obligated to perform services for BP in accordance with the terms of the contract.

When a party signs a contract without designating that it is acting in a representative capacity, as Cashman did here without any qualifying language indicating that it was only signing as an agent of the Joint Venture, it is a party to that contract. *Touchton v. Dover Corp./Rotary Lift Div.*, 319 F. Supp. 2d 1290, 1294 (N.D. Ala. 2007).  The signature block on page 24 of the MSC identifies Cashman as a "Contractor," and it was signed by Andrew B, Sunders, General Counsel, on behalf of Cashman.  No language qualifies Cashman's capacity or reflects that it was executed as an agent of the Joint Venture.  Similarly the MSC is signed by Lee Dragna as President of LAD, with the signature block identifying LAD as a "Contractor" under the MSC; again there is no language indicating that Dragna was signing only on the Joint Venture's behalf.  It is well established that the signature of one joint venture member is sufficient to bind the joint venture to the agreement; the two signatures here evidence an intent to bind Cashman and LAD individually.  *See PCI/RCI v. U.S.*, 36 Fed. Cl. 761, 769 (1996)("'The general rule is that each member of a joint venture has the authority to act for and bind the enterprise, absent agreement to the contrary.'"), *quoting Sadelmi Joint Venture*

*v. Dalton*, 5 F.3d 510, 513 (Fed. Cir. 1993); *Bell v. Morrison*, 26 U.S. 351, 370 (1828)("By the general law of partnership, the act of each partner, during the continuance of the partnership and within the scope of its objects, binds all the others.").[14]

BP concludes that the Contract clearly indicates that Cashman is a joint promisor and thus jointly liable under the

_____

[14] In its reply (#95 at pp. 4-6), Cashman rejects this argument, too. In *Neel v. Tenet Healthsystem Hosps. Dallas, Inc.*, 378 S.W. 3d 597, 605 (Tex. App.--Dallas 2012), misleadingly cited by BP, the court states the general rule that "a corporate officer's signature on a contract, with or without a designation as to representative capacity, does not render the officer personally liable." This general rule applies when "it is apparent from the entire contract that an officer of a corporation signed the contract on behalf of the corporation as an agent of the corporation." *Id.* Contrary to BP's representation, the agreement in *Neel* contained specific language stating "[e]ach and every person, firm ,corporation, partnership and association comprising Tenant (other than an officer signing on behalf of any corporation) shall be jointly and severally liable for performance of all the conditions and covenants binding on Tenant." The court relied on this language in deciding that the general rule did not apply. In contrast, here the MSC by and between BP and JV does not contain such language, but instead clearly states the contract is "by and between BP and JV." Thus the general rule should apply to the signatures by Cashman and LAD to deem them signed in a representative capacity. Furthermore, Cashman calls "nonsensical" BP's argument that Cashman's signature was not in a representative capacity because LAD signed, too; as BP pointed out, if the two sophisticated parties intended that JV members also be bound by the contract, the contract would have stated so. Just because the Joint Venture may be bound by one signature does not bar signatures by two. The parties could easily have stated, as those in Neel did, that "each and every person, firm, corporation, partnership and association comprising the [Joint Venture] shall be jointly and severally liable," but they did not.
Cashman maintains that it signed the Contract and the Work Releases solely in its representative capacity. The Work Releases designate "Contractor as the Joint Venture: "Cashman Equipment/LAD Services of Louisiana JV c/o Cashman Equipment Corp." In addition the Work Release signature block denotes "Contractor Representative." BP's proposed construction of the contract that Cashman is also a Contractor cannot be reconciled with the clear meaning of the Work Releases and would give rise to a blatant ambiguity.

Contract.  *See Pitman v. Lightfoot* , 937 S.W. 2d 496, 528 (Tex. App.-San Antonio 1996, writ denied)("In the law of contracts, joint and several liability usually arises when two or more promisors in the same contract promise the same or different performances to the same promisee"), *citing Restatement (Second) of Contracts* §§ 288, 289 (1981), and *Corbin On Contracts* § 928 (West 1951)("Each Joint Promisor is Bound For the Whole Performance Promised.").  Texas law is the same:  "obligations of multiple parties to a contract are usually 'joint and several.'"  *Id., citing Marynick v. Bockelmann*, 773 S.W. 2d 665, 668 (Tex. App.--Dallas 1989), *rev'd on other grounds*, 788 S.W. 2d 569 (Tex. 1990), and *Guynn v. Corpus Christi Bank & Trust*, 620 S.W. 2d 188, 190 (Tex. Civ. App.--Corpus Christi 1981, writ ref'd n.r.e.).[15]  Cashman is defined as a "Contractor" obligated to perform services for BP under the Contract and also as a "Party" to the Contract.  Cashman executed the Contract in its capacity as Cashman Equipment Corp., without any language indicating that it was signing solely for Joint Venture.

Contrary to Cashman's claim that the Joint Venture is individually identified as a "Party", the MSC states at ¶ 2.22 that "'<u>Party' or 'Parties</u>' shall have the meaning set out in the preamble to the Contract."  The preamble states, "Company and Contractor may hereinafter be referred to collectively as 'Parties' or individually as a 'Party.'"  Thus the term "Party" is synonymous with "Contractor" when referring to BP's counterparty.  Clearly, as

---

[15] As the Court indicated *supra*, Louisiana law of joint ventures does not follow this rule, but imposes a unique restriction on partner liability.

noted, "Contractor" includes Cashman.  In sum, Cashman is a party to the MSC and is therefore in privity with BP.

BP asserts that it has shown that Cashman misconstrues the Contract by relying on language that according the express terms of the contract should not be consulted when interpreting it, and that in doing so, renders multiple provisions meaningless and injects ambiguity into what is otherwise an unambiguous contract.

As for the quasi-contract claims based on overpayments being precluded by the existence of a contract, BP argues that the Fifth Circuit has held that this rule does not apply in admiralty where the overpayments were caused by the defendant's inflated invoices under a binding contract.  *Onaway Transp. Co. v. Offshore Tugs, Inc.*, 695 F.2d 197, 201-02 (5th Cir. 1963)("[It is well established that an excessive payment made in ignorance of the fact it is excessive is recoverable.)(citing *Restatement*, Restitution § 20), *superseded on other grounds*, *Missouri Pacific Rail Co. v. Railroad Com'n of Texas*, 948 F.2d 179, 182 n.1 (5th Cir. 1991).  The rule that money voluntarily paid with full knowledge of all the facts only applies when there is "'an intention on the part of the payor to waive his rights.'"  *Id.* at 201, *citing West Texas State Bank v. Tri-Service Drilling Co.*, 339 S.W. 2d 249, 253 (Tex. Civ. App.--Eastland 1960); *Arkwright-Boston Frs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 447 (5th Cir. 1991), *citing id., Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31 (5th Cir. 1963)(allowing counterclaim for money had and received based on overpayments mistakenly made to counterparty under a contract), and *U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.

2d 353, 357 (Tex. 1971). *See also Apache Corp. v. Dynegy Midstream Servs. Ltd. P'ship*, 214 S.W. 3d 554, 565 (Tex. App.--Houston [14th Dist.] 2006, *aff'd in part, rev'd in part on other grounds*, 294 S.W. 3d 164 (Tex. 2009)(noting that there are exception to the general rule that quasi-contract claims are precluded when an express contract governs the subject matter of the lawsuit, such as when the quasi-contract claims are based on overpayments); *Sw. Elec. Power Co. v. Burlington N.R.R. Co.*, 966 S.W. 2d 467, 469-71 (Tex. 1998); 42 C.J.S. Implied and Constructive Contracts § 29 (2007)("A claim for unjust enrichment may be had where overpayment was made under a valid contract."). BP argues that Cashman is a proper party for BP's quasi-contract theory because Cashman received more than $12 million in overpayments to which it is not entitled and it is well established that claimants may recover overpayments by asserting quasi-contract claims even where there is a valid contract. #91, Ex. 1, April 3, 2012 Audit Letter to Cashman, Bates No. JV000331-336. Moreover, BP seeks damages against Cashman in all its potential capacities, including its capacity as a secondary obligor if the joint venture is insufficient to satisfy its claim.

### Cashman's Reply

Cashman insistently reiterates that contrary to BP's argument, the MSC unambiguously dictates that the contract is by and between BP and the Joint Venture in the heading of the contract, in the preamble and on the Work Releases. It is also the only reasonable construction of the contract.

BP now seeks to sue Cashman in all capacities and for quasi contract, but it cannot because Cashman was not a party to the contract.  BP has acknowledged that Cashman was acting in a representative capacity only:  its Amended Complaint states that "the July Work Releases were executed by Cashman.  As a principal of Cashman/LAD, Cashman had the authority to contractually bind Cashman/LAD."  #12, ¶ 23.  Contrary to BP's argument that it does not matter if it is suing Cashman as a Contractor or in a secondary capacity, as BP cannot sue Cashman for a breach of contract when Cashman was not a party to the Contract.  Cashman quotes from BP's motion to dismiss (#52 at p. 5) to show that BP knows that the Joint Venture is the party that invoiced BP at the wrong rate: "The only question in this lawsuit is whether Joint Venture must return a portion of the funds obtained by invoicing BP at the Modified daily Rate (or higher) where it should have been invoicing BP at the reduced Standby Rate."  In BP's response to Defendants' motion for leave to file second amended answers (#75 at p. 12), BP stated, "BP has not sued them [Cashman and LAD] as sureties or secondary obligors," but rather it has sued Cashman "directly for breach of contract, for return of monies wrongly received, and for unjust enrichment."  It then backtracked on this assertion.  BP's Sur-reply, #87 ("reaffirm[ing] its intent to hold Cashman and LAD liable in all capacities for all damages alleged in the Complaint").  Regardless, the applicable joint venture law restricts any claim BP has against Cashman and precludes the present claims BP brings against it.

Regarding BP's argument that it has quasi contract claims against Cashman, Cashman points out that in each of the cases relied upon by BP the quasi contract claim for overpayment was made against an actual party to the contract in dispute, not the case here.  Thus the quasi contract claims against Cashman must be dismissed.

BP submits three exhibits (#91, Exhibits 1, Audit Letter; 6, a magazine article about Gulp skimmers; and 7, Westlaw corporate records of Gulp Oil Skimmers LLC) to support its quasi contract claims against Cashman.  Cashman contends that because the contract is unambiguous, the Court does not need to review extraneous evidence.  Moreover the exhibits are unauthenticated hearsay and are not relevant.  Furthermore none of the three shows what BP claims it demonstrates.  BP also claims that Gulp Oil Skimmers LLC does not impact the party with which BP contracted in this case, the Joint Venture.

### Court's Decision

The threshold issue to be resolved here is which entities are parties to the MSC, or, in what capacity is BP suing Cashman? The record reflects that BP has changed its mind during the course of the litigation.

The governing pleading is BP's Amended Original Complaint (#12), which simply states in ¶ 49 that "BP demands judgment against Defendants, jointly and severally . . . ."  In its response to Defendants' motions for leave to file second amended answers (#87 at p. 12), BP argues that the motion should be denied in part because allowing Defendants to assert the affirmative defense of

discussion, a right only of a secondary obligor, is not available because "Cashman and LAD are not entitled to discussion because BP has not sued them as sureties or secondary obligors.  Rather, BP has sued them directly for breach of contract, for return of monies wrongly received, and for unjust enrichment.  ECF No. 12, ¶¶ 41-55."  In its surreply to Defendants' motions for leave to file second amended answers (#87 at p.1), BP "reaffirms its intent to hold Cashman and LAD liable in all capacities for all damages alleged in the Complaint."  In its Response in Opposition to Cashman's motion for summary judgment (#91 at p. 5), BP asserts that "it seeks damages against Cushman in all capacities, including (if necessary) its capacity as a secondary obligor."  Clearly there are genuine issues of law and fact here.

Related to the issue of capacity and the affirmative defense of discussion, in its opposition (#75 at pp. 11-13) to Cashman's motion for leave to file a Second Supplemental and Amended Answer, Affirmative Defenses [Discussion under Louisiana Civil Code Art. 5151] and Counterclaim (#73), BP  correctly pointed out that "federal law, rather than state law, invariably governs procedural matters in federal courts." *Camacho v. Texas Workforce Com'n*, 445 F.3d 407, 409 (5th Cir. 2006), *citing Motorola Communications & Electronics, Inc. v. Dale*, 665 F.2d 771, 774 (5th Cir. 1982).  BP therefore contended that the Court should deny the motion for leave to amend because asserting the affirmative defense of discussion was a futile attempt to apply a Louisiana state court procedural mechanism to this proceeding, which instead is governed by maritime and/or Texas law, as expressly stated in the MSC, §§

24.02 and 24.03.  Nevertheless Judge Stacy granted the motion.

The fact that Cashman pleaded the affirmative defense of discussion, however, does not mean that it applies here as matter of law.  As indicated in the summary of relevant law, maritime law, a constant, fundamental premise "is that the uniformity of admiralty law must be preserved and that state law may be applied only where it works no 'material prejudice to the essential features of the general maritime law.'  That uniformity is not to be sacrificed to accommodate state law is a fundamental premise of admiralty jurisdiction." *Green v. Vermillion Corp.*, 144 F.3d 332, 240-41 (5th Cir. 1998), *citing* John *Baizley Iron Works v. Span*, 281 U.S. 222 (1930), and Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 6-58 to 6-61 (2d ed. 1975); *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings*, 129 Fed. Appx. 45, No. 04-300003, 2005 WL 408144, at *7 (5th Cir. Feb. 22, 2005).

The Court agrees with BP.  In a diversity action where the underlying cause of action is based on state law, federal courts apply state procedural law.  *Deretich v. City of St. Francis*, 149 F.3d 1187 (Table), Nos. 97-3925 and 97-2497, 1998 WL 327207, at *2 (8th Cir. June 19, 1998), *citing Walker v. Armco Steel Corp.,* 446 U.S. 740, 751-53 (1980).  In actions brought in federal court based on federal question, however, that principle does not apply. *West v. Conrail*, 481 U.S. 35, 39 & n.4 (1987).[16]  Moreover, as noted, admiralty cases in federal court are governed by federal

---

[16] As noted *supra*, where a federal court has both admiralty and diversity jurisdiction, federal courts apply substantive admiralty law to claims that sound in admiralty. *See Pope & Talbot,* 346 U.S. at 410-11.

substantive and procedural law. *S.S. Philippine Jose Abad Santos v. Bannister*, 335 F.2d 595, 597 (5th Cir. 1964).[17] "Strict local rules of pleading cannot be used to impose unnecessary burdens upon the rights of recovery authorized by federal laws. . . . Should this Court fail to protect federally created rights from dismissal because of over-exacting local requirements for meticulous pleadings, desirable uniformity in adjudication of federally created rights could not be achieved." *Brown v. Western Ry. of Ala.*, 338 U.S. 294, 298-99 (1949).

The right of the affirmative defense is a procedural mechanism contained within the Louisiana Code of Civil ***Procedure*** art. 5151 [emphasis by the Court] and is a procedural rule. The Court concludes that the procedural rule of discussion for Louisiana joint venture/partnership liability is inapplicable here.

Furthermore, the substantive law, embodied in Louisiana Civil Code art. 2817 and Revision Comments, makes a partnership, and thus a joint venture, the principal obligor for its debts. Its provision that if found liable, each individual partner may be secondarily liable for only its virile share of the debts of the partnership is peculiar to Louisiana, and in the absence of general federal maritime law on partnership liability, is inconsistent with

---

[17] A court applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law. *Id.; Alcoa S.S. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967). *See* Alfred Hill, *State Procedural Law in Federal Nondiversity Litigation*, 69 Harvard L. Rev. 66 (Nov. 1955); Paul J. Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision*, 105 U, Pennsylvania L. Rev. 797 (April 1957). Such is not the case here with Louisiana procedural law regarding joint ventures.

Texas law and general contract law, which would impose joint and several liability on all partners.  Thus in deference to general maritime law's emphasis on uniformity, not to be sacrificed to accommodate state law, the Court finds that secondary liability for virile share, too, is inapplicable here.  Furthermore it notes that despite extensive research it has failed to find a single case in admiralty outside of Louisiana courts where the Louisiana procedural mechanism of discussion or the substantive partnership law of virile share was applied.

A Texas partnership is also "an entity distinct from its partners."  Tex. Bus. Orgs. Code § 152.056.  Texas adopted the entity theory of partnership when it adopted the Revised Uniform Partnership Act (TRPA"), codified it in the Texas Business Organizations Code.  *American Star Energy and Minerals Corp. v. Stowers*, 457 S.W. 3d 427, 429 (Tex. 2015).  Under the TRPA, a partner is jointly and severally liable for all obligations of the partnership.  *Id., citing* Tex. Bus. Orgs. Code § 152.304(a).  "'A judgment against a partnership is not by itself a judgment against a partner.'"  *Id., citing id.* § 152.306(a).  A creditor may seek to obtain a judgment against a partner or partners, individually, in the suit simultaneously against the partnership or in a separate suit.  *Id.* at 429-30*, citing id.* § 152.305.  Nevertheless, it may not "seek satisfaction of the judgment against a partner until a judgment is rendered against the partnership.'"  *Id.* at 420, *citing id.* § 152.306(b)(2)(A).  Generally under the TRPA "the judgment against the partnership must go unsatisfied for ninety days before a creditor may proceed against a partner and his assets.'"  *Id.,*

*citing id.* §152.306(b)(2)(C). Thus the Court concludes that BP has properly sued the partnership and the individual partners simultaneously.

Regarding the issue of the individual signatures of Cashman and LAD on the MSC without mention of the Joint Venture, it is long established under Texas law that the failure to include the partnership name is immaterial if all the partners have signed the contract: "[t]he fact that both partners signed the contract, and did not sign the partnership name, by one or both, is without legal significance so far as the application of the general rule that in partnership affairs each partner is the agent of the other, is concerned." *Pegues v. Dilworth*, 134 Tex. 169, 132 S.W. 2d 582 (Comm'n App.1939); 68 CJS Partnership § 193 (database updated June 2015). The Court concludes that the two signatures of the attorneys for Cashman and Lad binds the Joint Venture and the two two joint venturers in all capacities.

Last of all, the Court agrees with BP that as a matter of law the quasi contract claims of money had and received and unjust enrichment are properly brought along with a breach of contract claim under Fifth Circuit and Texas law when the issue is overpayment.

Accordingly, for the reasons stated above, the Court
ORDERS that Cashman's motion for summary judgment is
DENIED.

**SIGNED** at Houston, Texas, this  22<u>nd</u>  day of  <u>September</u>,
2015.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE