United States District Court
Southern District of Texas
**ENTERED**
April 08, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BP EXPLORATION & PRODUCTION §
INC., §
§
        Plaintiff, §
§
VS. §     Civ. A. H-13-3046
§
CASHMAN EQUIPMENT CORPORATION, §    ADMIRALTY CASE-Rule 9
LAD SERVICES OF LOUISIANA, LLC,§
AND CASHMAN EQUIPMENT CORP. AND§
LAD SERVICES, A JOINT VENTURE, §
§
        Defendant. §

## OPINION AND ORDER

Pending before the Court in the above referenced cause, alleging breach of the Master Services Contract and the Work Releases pursuant to it by overbilling, money had and received, and unjust enrichment relating to Plaintiff BP Exploration & Production Inc.'s ("BP's") clean-up response to the Deepwater Horizon oil spill in the Gulf of Mexico, is Defendants Cashman Equipment Corp. and LAD Services of Louisiana, LLC (the "Joint Venture"), Cashman Equipment Corp. ("Cashman"), and LAD Services of Louisiana, LLC's ("LAD's")' motion to strike BP's summary judgment evidence (#124) supporting BP's motion for partial summary judgment (initially filed under seal as instrument #113, and subsequently filed as a redacted copy as #123).

### I.   Summary of The Three Bases for the Motion

Defendants challenge BP's evidence regarding three

-1-

individuals, #124 at pp. 1-2:

> The declaration of Elizabeth Holcomb Fairchild and attachments are not admissible because BP fails to lay a proper foundation for her testimony.  There is no basis for Fairchild's statement of personal knowledge[1] and thus, the attached documents are inadmissible hearsay.[2] Further, the document attached to Fairchild's declaration is misrepresented and includes irrelevant information.

> BP submits the declaration of Hanaa Kaloti Shakir, a one-year associate with Kirkland & Ellis, in support of its damages.   The Shakir declaration lacks foundation, is inadmissible lay opinion[3] and/or expert testimony.[4]  The

---

[1] Federal Rule of Evidence 602 asserts, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony.  This rule does not apply to a witness's expert testimony under Rule 703."

"An affiant . . . may have personal knowledge of activities in which she has not actually participated. . . . [For example] a manager of an organization can glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records."  *Hamilton v. Trover Solutions, Inc.*, No. 03-30547, 2004 WL 1491587, at *1 (5th Cir. 2004), *citing Dalton v. FDIC*, 987 F.2d 1216, 1223 (5th Cir. 1993), and *FDIC v. Patel*, 46 F.3d 482, 484 (5th Cir. 1995), and *FDIC v. Selaiden Builders, Inc.*, 973 F.2d 1249, 1255 (5th Cir. 1992).

[2] *See* Rules of Evidence 801 (defining hearsay as a statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted"), 802 (hearsay is inadmissible except as provided by a federal statute and these rules or other rules provided by the Supreme Court), and 803 (exceptions to the hearsay rules).

[3] Federal Rule of Evidence 701 states about opinion testimony by lay witnesses,

> If a witness is not testifying as a expert, testimony in the form of an opinion is limited to one that is:

> > (a) rationally based on the witness's perception;

-2-

documents attached to her declaration are likewise
inadmissible because BP fails to lay the proper predicate
for their admission, they are incomplete and they fail to
meet the requirements of a Fed. R. Evid. 1006 summary of
exhibits.

BP submits the declaration of Georgia Lucier to
authenticate numerous other documents. Lucier fails to
establish that she has personal knowledge sufficient to
authenticate any of the attached documents.
Specifically, Exhibits 18, 19, 24, and 26 constitute
inadmissible hearsay. BP misrepresents Exhibit 24 and
thus the document is not relevant pursuant to Fed. R.
Evid. 401.[5]  Additionally, Exhibit 26 is incomplete and

---

(b) helpful to clearly understanding the witness's
testimony or to determining a fact issue; and

(c) not based on scientific, technical, or
otherwise specialized knowledge within the scope
of Rule 702.

[4] Rule 702 addresses testimony by an expert witness:

A witness who is qualified as an expert by knowledge,
skill, experience, training, or education may testify
in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other
specialized knowledge will help the trier of fact
to understand the evidence or to determine a fact
in issue;

(b) the testimony is based on sufficient facts or
data;

(c) the testimony is the product of reliable
principles and methods; and

(d) the expert has reliably applied the principles
and methods to the facts of the case.

[5] Rule 401 provides,

Evidence is relevant if:

(a) it has any tendency to make a fact more or less

inadmissible under Fed. R. Evid. 106.[6]

## II.  Substantive Law Regarding Authentication of Evidence

Federal Rule of Civil Procedure 56(c)(4) provides, "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Federal Rule of Evidence 901(a) states, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Examples include the testimony of a witness with knowledge that the item is what it is claimed to be or a nonexpert's opinion that handwriting is genuine or an opinion identifying a person's voice based on hearing the voice at any time under circumstances that connect it with the alleged speaker.  Rule 901(b)(1) and (2).  As opined by the court in *Madison One Holdings, LLC v. Punch Intern., N.V.*, Civ.

---

probable than it would be without the evidence; and

(b) the fact is of consequence in determining the section.

[6] Rule 106 states,

If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

Case No. 4:06-cv-3560, 2009 WL 911984, at *9 (S.D. Tex. Mar. 9, 2009),

> The proponent does not have to rule out all possibilities not consistent with authenticity; the standard is one of "reasonable likelihood." *United States v. Alicea-Cardoza*, 132 F.3d 1, 4, 5 (1st Cir. 1994). To authenticate documents used to support a motion, a party must attach the documents as exhibits to an affidavit made by a person through whom exhibits could be admitted into evidence at trial. *Orr v. Bank of America NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). To authenticate by affidavit, an affiant must affirmatively show he has personal knowledge and "is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). The parties may also authenticate exhibits with deposition excerpts as long as these excerpts are accompanied by the court reporter's certification that the copy is true and correct. *Refrigeracion Y Restaurante S.A. De C.V. v. Wal-Mart Stores, Inc.*, No. Civ. A. SA97CA354EP, 1998 WL 1782541, at *1 (W.D. Tex. July 21, 1998).

Affidavits from which "'the affiant's personal knowledge and competence to testify are reasonably inferred from their positions and the nature of their participation to which they swore'" may also be used to authenticate. *Id.* at *11, *citing DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005); *Diamond Offshore Co. v. Survival Systems Intern., Inc.*, 902 F. Supp. 2d 912, 932 (S.D. Tex. 2012)("[T]he affidavit need not expressly state that it is made on 'personal knowledge.' Rather the court may infer from the affiant's position in the company and the nature of his or her participation in the matters to which he or she swore that the affidavit is made upon personal knowledge."). "A witness may

---

[7] Because an affidavit must be based on personal knowledge, it "cannot affirmatively state that it is only based

testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may consist of the witness's own testimony." Rule of Evid. 602.  Alternatively where an affiant has not participated in the matters to which he swore, he may still "glean personal knowledge of the practices of that organization by participating in those practices or reviewing the organization's records." *Id., citing Hamilton v. Trover Solutions, Inc.*, No. 03-30547, 2004 WL 1491587, at *1 (5th Cir. 2004).  A party cannot create a genuine issue of material fact by later submitting an affidavit that contradicts that party's earlier sworn deposition without explanation of the conflict. *Vicari v. Ysleta I.S.D.*, 546 F. Supp. 2d 387, 408 (W.D. Tex. 2008), *citing Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002).  "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985), *citing* C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure:  Civil 2d* § 2738 (1983).

---

on 'information and belief.'" *Diamond Offshore*, 902 F. Supp. 2d at 932, *citing DIRECTV*, 420 F.3d at 530 n.40.  "'Statements made on information and belief do not constitute proper summary judgment evidence.'" *Id., citing de la O v. Housing Auth. of City of El Paso*, 417 F.3d 495, 502 (5th Cir. 2005), *cert. denied*, 546 U.S. 1062 (2005).

Circumstantial factors can also authenticate documents: for example, firm logos, letterheads, pre-printed addresses, dates and telephone numbers can help establish authenticity. *Madison One*, 2009 WL 911984, at *10, citing Rule of Evidence 901(b)(4)("The appearance, contents, substance, internal patterns, or other distinctive characteristics of an item, taken together with all the circumstances" may "satisfy the requirement of authenticating or identifying a piece of evidence."). "A comparison with an authenticated specimen by an expert witness or the trier of fact" may also serve to authenticate that the item is what the proponent claims. Rule 901(a)(3).

Not all discoverable material is admissible. *Railroad Management Co., LLC v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 221 (5th Cir. 2005). That a document was produced in discovery by the opposing party, alone, is not conclusive as to its authenticity. *Elwakin v. Target Media Partners Operating Co., LLC*, 901 F. Supp. 2d 730, 742 (E.D. La. 2012),[8] *citing Railroad*

---

[8] On the other hand, the business records exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(A), states that "documents produced in response to discovery requests are admissible because they are self-authenticating and constitute the admissions of a party opponent under Rule 801(d)(2)(A)." *Hannon v. Kiwi Services*, No. 3:10-CV-1382-K-BH, 2011 WL 7052795, at *2 (N.D. Tex. Dec. 30, 2011)(*citing Anand v. BP West Prods., LLC*, 484 F. Supp. 2d 1086, 1090 n.11 (C.D. Cal. 2007), *report and recommendation adopted*, 2012 WL 137805 N.D. Tex. Jan. 17, 2012), *amended on other grounds*, No. 3:10-CV-1382-K, 2012 WL 234650 (N.D. Tex. Jan. 24, 2012). *In accord Trammell Crow Residential Co. v. Am. Protection Ins. Co.*, Civ. A. No. 3:10-CV-2163-B, 2012 WL 4364616, at *7 n.3 (N.D. Tex. Sept. 25, 2012).

*Management*, 428 F.3d at 219-20.   Additional factors may buttress authentication, e.g., the producing party has signed the document, the producing party does not claim that the document is not authentic or assert the signature is a forgery, or the producing party concedes that contents of the document are correct. *Railroad Management*, 428 F.3d at 220.

Under Federal Rule of Evidence 701, unless a declarant qualifies as an expert, he may not offer opinion testimony unless it is "(1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." *See Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 459-60 (5ᵗʰ Cir. 1996)("Rule 701 provides that a non-expert witness may testify in the form of opinions or inferences only when they are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony. . . . [A] person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person.⁹"), *citing Brady v. Chemical Const. Corp.*, 740

---

⁹ Federal Rule of Evidence 702 states that a witness may be qualified as an expert by knowledge, skill, experience, training or education. *Lavespere v. Niagara Mach & Toll Works, Inc.*, 910 F.2d 167, 176 (5ᵗʰ Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). To qualify as an expert, a witness's testimony must "both rest[] on a reliable foundation and [be] relevant to the task at hand. Pertinent evidence based on scientifically valid principles will

F.2d 195, 200 (2d Cir. 1984). *See also* 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 701[02], at 701-31 to -32 (1988)(footnotes omitted)("Basically Rule 701 is a rule of discretion. . . . The trier of fact can normally be depended upon . . . to pick up the non-verbal signals, which, although absent from the record, indicate fairly clearly when the witness is describing what he saw and when he is describing what he thinks happened, the trier of fact also should generally be depended upon to give whatever weight or credibility to the witness' opinion as may be due.").

Federal Rule of evidence 803(6) exempts from the hearsay rule

A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

> (C) making the record was a regular practice of that activity;

> (D) all of these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11)[10] or (12) or with a statute permitting

---

satisfy these demands." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

[10] Federal Rule of Evidence 902(11), addressing "Certified Domestic Records of a Regularly Conducted Activity," provides that the following item of evidence is self-authenticating:

certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Under Rule 803(6) computer data compilations may be business records and are admissible if they satisfy three conditions:  "(1) [t]he records must be kept pursuant to some routine procedure designed to assure their accuracy[;] (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive); and (3) they must not themselves be mere accumulations of hearsay or uninformed opinion."  *St. Michael's Emergency Center, LLC v. Aetna Health Management, LLC*, Civ. A. No. H-08-2336, 2011 WL 12896736, at *7 (S.D. Tex. Aug. 22, 2011), *citing Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980).  The district court has wide discretion in determining whether to admit business records.  *Rosenberg*, 634 F.2d at 665.  "Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for admissibility of the records; he need not have been the

---

The original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by the certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court.  Before trial or hearing, the proponent must give the adverse party reasonable written notice of the intent to offer the record--and must make the record and certification available for inspection--so that the party has a fair opportunity to challenge them.

preparer of the record, nor must he personally attest to the accuracy of the information contained in the records." *Id.* *See* *Federal Sav. & Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 702 (5th Dir. 1991)(finding a senior attorney had personal knowledge as custodian of the documents). The business records exception to the hearsay rule was not intended to include documents prepared in anticipation of litigation. *Palmer v. Hoffman*, 318 U.S. 109, 114 (1943).

Federal Rule of Evidence 1006 recites,

The proponent may use a summary chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

In *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001)(footnotes omitted), *cert. denied*, 535 U.S. 1016 (2002), the Fifth Circuit opined about such evidentiary summaries and the broadly interpreted rule,

Rule 1006 allows admission of summaries when (1) the evidence previously admitted is voluminous, and (2) review by the jury would be inconvenient. A summary may include only evidence favoring one party, so long as the witness does not represent to the jury that he is summarizing all the evidence in the case.
    Summary evidence must have an adequate foundation in evidence that is already admitted, and should be accompanied by a cautionary jury instruction. Full cross-examination and admonitions to the jury minimize the risk of prejudice. We previously approved a cautionary instruction that "summaries do not, of themselves, constitute evidence in the case but only purport to summarize the documented and detailed evidence

already submitted," and an instruction that a witness's summary "is not the evidence, the evidence is the documents themselves that he has been referring to."

Summary charts in particular are admissible when (1) they are based on competent evidence already before the jury, (2) the primary evidence used to construct the charts is available to the other side for comparison so that the correctness of the summary may be tested, (3) the chart preparer is available for cross-examination, and (4) the jury is properly instructed concerning the use of the charts. Summaries may accompany the jury into the jury room.

Federal Rules of Evidence 611(a) and 1006 govern the admission of organization charts and summary evidence. *U.S. v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006), *citing U.S. v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2003). There is a distinction between demonstrative aids that are inadmissible as exhibits and summary exhibits under Rule of Evidence 6001, which are admissible if the evidence they purport to summarize is admissible. *James v. Haven Homes Southeast, Inc.*, Civ. A. No. 08-770-JJB-CN, 2011 WL 777971, at *2 (M.D. La. Feb. 28, 2011).

Federal Rule of evidence 611(a), states, "The court shall exercise reasonable control over the mode and order of . . . presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." The advisory note for 1972 Proposed Rules states that the rule "covers such concerns as . . . the use of demonstrative evidence . . . ." *United States v. Posada-Rios*, 158 F.3d 832, 869 (5th Cir. 1998)("We are satisfied that Fed. R. Evid. 611(a) afforded the district court

discretion to allow the government to use the summary charts and organizational charts" as "'pedagogical' devices intended to present the government's version of the case . . . with limiting instructions" that the charts were not evidence, but devices to help the jury follow the evidence.), *cert. denied*, 526 U.S. 1031, 526 U.S. 1980, and 526 U.S. 1137 (1999).   With regard to the court's discretion to control presentation of evidence under Rule 611(a), the court may permit the use of charts and summary evidence as pedagogical devices to present a party's version of the case. *U.S. v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000).   Such aids are allowed to help the jury in evaluating the evidence and in clarifying or amplifying the argument based on the evidence that has already been admitted, but the jury must be cautioned that such charts are not independent evidence.   *Id.; Harms*, 442 F.3d at 375. Such charts "are not admitted into evidence and should not go to the jury room unless the parties consent."   *Harms*, 442 F.3d at 375*, citing Taylor*, 210 F.3d at 315.   Federal courts have great discretion in deciding whether a demonstrative aid will be helpful or will cause confusion or prejudice; "evidence that is relevant is admissible but may be excluded if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."   *Harms*, 442 F.3d at 375 (Demonstrative pedagogical charts may be presented under Rule 611(a) only "if they are consistent with the evidence and not

misleading."), *citing* Fed. R. Evid. 401 and 403.

Summary evidence may be admitted into evidence under Federal Rule of Evidence 1006 if it is a summary chart based on previously admitted evidence that is so voluminous that in-court review by the jury would be difficult, but it is admissible only as long as the evidence it purports to summarize is admissible under the Fed. Rules and if the offering party provides the requisite foundation establishing its accuracy. *Id.*

In their motion to strike, Defendants apply the standard of review under Federal Rule of Civil Procedure 56(c)(2) and (4) that "[s]ummary judgment evidence must be properly authenticated and otherwise admissible" and that "[a]ffidavits or declarations used in summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify regarding on the matters stated." #124 at p. 2.

**III. Specific Contentions of Defendants' Motion to Strike**

**A. Elizabeth Holcomb Fairchild's ("Fairchild's") Declaration (#113 and 123) and Attached Spreadsheet (Ex. to Fairchild Decl.).**

Fairchild declares that she has personal knowledge of the matters set forth in her declaration.  She states that she is a Competence Assurance Advisor in the Upstream Talent & Learning Division of BP American Production Company, that she is familiar with the facts at issue in this litigation, including the Master

-14-

Service Contract ("MSC") and Work Releases referenced in BP's motion for summary judgment, and that she is familiar with BP's SAP accounting software program and record-keeping procedures, including those for recording payments made to vendors for services provided to BP during the Deepwater Horizon incident response. Fairchild declares that Exhibit A is a true and correct copy of an export[11] from BP's SAP accounting software program showing payments made by BP to Cashman for barge and skimming services performed pursuant to the MSC and kept by BP in the regular course of business. She concludes, "BP directly paid Cashman $62,925,317.30 for use of the Gulps and supporting equipment during the *Deepwater Horizon* incident response."

Defendants contend that Fairchild fails to provide a sufficient factual basis for her claimed personal knowledge and competence to testify. She does not describe what a Competence Assurance Advisor is or does, and the title does not demonstrate what relationship she would have to accounting. She does not state that she is a corporate officer. Because no factual basis for her personal knowledge is presented, her declaration is inadmissible and the attached spreadsheet is unauthenticated and constitutes hearsay under Fed. R. Evidence 801 because it seeks to use an out-of-court statement to establish the truth of the matter asserted. In addition, because there is no factual basis provided for

---

[11] Labeled Deposition Exhibit 169.

Fairchild's competency to testify, her statement about the amounts paid to Cashman is a conclusory factual statement.

Finally, Defendants maintain that the spreadsheet attached to Fairchild's declaration is not what it claims to be, i.e., an accounting of all payments made to Cashman for barge and skimming services.  They assert that it includes payments purportedly made to Cashman not related to the eight Gulp skimmers, which are the only vessels challenged by the First Amended Complaint (#12).  For instance, the spreadsheet includes payments made to Cashman for barges and vessels for which BP has not pleaded any cause of action or identified any damages.  *See also* affidavit of Raymond Riddle, #124, Ex. A.  The spreadsheet also includes a May 17, 2011 payment of $232,693 made by BP to the Joint Venture for damages to one of the Joint Venture vessels.  BP summary judgment Ex. 22.  Because of these misrepresentations, argue Defendants, the document is inaccurate, presents irrelevant evidence, and is inadmissible pursuant to Fed. R. Evid. 401 and 403.[12]

## 2.  Declaration of Hanaa Kaloti Shakir ("Shakir") and Supporting Documents relating to Damages

Shakir declares that she is an associate at Kirkland & Ellis, LP, that she has personal knowledge of the facts in her declaration

---

[12] Rule 403 states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

and of the documents she used (invoices submitted by Cashman for the Gulp Packages and the effective Work Releases) in creating the summary of Gulp's overcharges, Ex. A.  She states, "I compared these documents and calculated the difference between what should have been charged according to the Work Release and what was charged according to Cashman's invoices." Ex. A-1.  Exhibit A-2 is composed of the Work Releases she used in creating the A-1 summary, which is authenticated by the deposition testimony of Heather Pacheco.  Apr. 28, 2915 Dep. Tr. 21:11-23:10.  Exhibit B is "The Summary of Support Vessel Overcharges" created by Shakir in reviewing Cashman's invoices and redelivery letter dates for three support vessels (the CR-107, the JMC 95, and the LAD 9).  Exhibit B-1 is composed of invoices on which Shakir relied in creating the Exhibit B summary.  Exhibit B-2 is the supporting documentation of the start date or redelivery dates for the Support Vessels, on which Shakir also relied in creating the Exhibit B summary.  She declares that the two spreadsheets, Exhibits A and B, are based on documents produced by Defendants in this case in response to BP's document requests.

In their challenge Defendants emphasize that Shakir is only a first-year associate at Kirkland & Ellis, which is representing BP in this litigation.  #124, Ex. B, Biography of Shakir from Kirkland & Ellis website.  Shakir represented BP in the deposition of Jamie Cashman, President of Cashman.  Her declaration and its attachments

-17-

are the only evidence of damages presented by BP in its motion for summary judgment.  Defendants contend that Shakir's declaration lacks foundation, is inadmissible opinion testimony, and the spreadsheets are not admissible as summary documents under Fed. R. of Evid. 1006.

Defendants also object that the two spreadsheets fail to provide the total number relied upon by BP in its motion and that Shakir fails to provide all the documents that she relied on in creating them.

Defendants also contend that Shakir provides no facts to support her statement that she has personal knowledge of the factual matters set forth in her declaration.  Defendants point out that it is unlikely she does because the events of this case and the documents she cites took place or were generated in 2010-2011, when she, according to her biography, was an undergraduate in college.

Furthermore, Shakir fails to state that she represents BP here.  Even if she does, that representation is insufficient as a basis supporting her testimony about damages and it would be inappropriate for a lawyer representing a party in a case to provide testimony based simply on her representation of that party in that case.  Furthermore BP did not list Shakir as a witness in its initial disclosures, and it did not designate an expert witness to testify about damages or any other issue.  It should have listed

Shakir as "an individual with discoverable information" under Fed. R. Civ. P. 26(a)(1)(A)(i).  A party who fails to disclose information required in Rule 26(a) without substantial justification is not permitted to use that evidence at trial unless such error is harmless.  Fed. R. Civ. P. 37(c)(1).

Defendants further argue that Shakir's declaration fails to present Shakir as a fact witness under Federal Rules of Evidence 602 and 701 or her submission as a summary under Rule 1006.  Though claiming that she has personal knowledge, Shakir fails to provide any facts supporting it other than her representation of BP here. Although she provides opinion testimony about the manner in which maritime terms of art should be applied to the Work Releases, she does not qualify as an expert witness under Federal Rule of Evidence 702.  Other than claiming that she is an associate at Kirkland & Ellis, she does not provide a work history or indicate the type of cases on which she has worked.

Defendants also charge that her declaration and summary exhibits are inadmissible under Federal Rule of Evidence 1006, which requires that the proponent of the summary be available for cross examination and that the proponent provide a sufficient foundation for all of the documents relied upon.  *Bishop*, 264 F.3d at 547; *United States v. Oros*, 578 F.3d 703, 707-08 (7th Cir. 2009). A summary exhibit cannot provide the proponent's opinion testimony. *Delima v. Home Depot U.S.A., Inc.*, 616 F. Supp. 2d 1055, 1073-74

(D. Oregon 2008). *See also First Financial Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 836 (C.D. Ill. 2014)(When based on inferences, "[r]ather than serving as a catalogue of 'objective characteristics,' the spreadsheet is pure argument.").

Defendants additionally claim that because Shakir is BP's attorney here, her declaration and attached summaries are inadmissible. Rule 1006 does not allow for admission of a summary prepared by a lawyer, rather than a fact or expert witness in the case. *U.S. v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997)(Federal Rule of Evidence 1006 "does not allow for the admission of a summary . . . that was prepared by a lawyer trying the case and that restates and distills other properly admitted exhibits. In fact, we believe that such a summary is a written argument . . . ."), *cert. denied*, 522 U.S. 1007 (1997).[13]

---

[13] BP has stated that it submits Shakir's declaration and the summary spreadsheets under Rule 611(a), which also governs the admission of summary evidence. *U.S. V. Saunders*, 2013 WL 2903071, at *3 (E.D. La. June 13, 2013). This Court has already pointed out that the Fifth Circuit has ruled that the Court under Rule 611(a) has the discretion to allow an attorney to use summary evidence as pedagogical device to present his client's version of the case. *Posada-Rios*, 158 F.3d at 869 ("We are satisfied that Fed. R. Evid. 611(a) afforded the district court discretion to allow the government to use the summary charts and organizational charts" as "'pedagogical' devices intended to present the government's version of the case . . . with limiting instructions" that the charts were not evidence, but devices to help the jury follow the evidence.); *U.S. v. Taylor*, 210 F.3d at 315. Even in a jury trial, such aids are allowed to help the jury in evaluating the evidence and in clarifying or amplifying the argument based on the evidence that has already been admitted, but the jury must be cautioned that such charts are not independent evidence. *Id.; Harms*, 442 F.3d at 375. Such charts

Regarding Exhibits A and A-1, "Summary of Gulp Overcharges," Defendants contend that the copies of the invoices attached to Shakir's declaration and used to create the summary are not properly authenticated and are incomplete copies of the invoices submitted to BP for payment.  Thus the invoices are inadmissible, as is the summary based on them.  The 213's rates were the original rates negotiated between BP and the Joint Venture (see BP's Ex. 8 with Work Release No. 1, containing rates that match those in the 213).  Defendants claim that BP submitted incomplete invoices because complete copies, which include a different rate and what BP now claims is the standby rate as a third rate, create a fact issue as to the appropriate rates and BP's waiver of its rights by paying each of those invoices without objection.

Defendants maintain that the "Summary of Gulp Overcharges" is not a summary of voluminous documents, but an argument of counsel as to how the ambiguous terms in the Renewed Work Releases should be applied.  To create the summary, Shakier applied words in the Renewed Work Releases to the invoices and made a determination as to when the standby rate applied and what the term "standby"

_____

"are not admitted into evidence and should not go to the jury room unless the parties consent." *Harms*, 442 F.3d at 375, *citing Taylor*, 210 F.3d at 315 ("[A]llowing the use of charts as pedagogical devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence under Rule 611(a)"). *See also U.S. v. Buck*, 324 F.3d at 791 (holding admission of pedagogical chart into evidence to be harmless where the chart was supported by and accurately summarized other evidence.").

according to BP.[14]   Furthermore, the assumption that the vessels
never worked after July 17 is contrary to the findings of BP's
auditors.  Ex. H.  Shakir presents an opinion and an argument about
the application of the term "standby" to the facts here; she
disregarded controverting evidence and at worse misrepresented
evidence in creating her declaration; and fact issues exist about
what "standby" means and how to apply terms in the Renewed Work
Releases because BP's attorneys disregarded the findings of its
auditors.   Thus, Defendants conclude, Shakir's declaration is not
a presentation of evidence, but argument by counsel.

Furthermore, observe Defendants, Shakir relied on invoices for
three vessels not in dispute in this case, as well as
unauthenticated email and a letter that she claims provided
evidence of redelivery dates of the three support vessels, for
Exhibit B, "Summary of Cashman's overcharges Related to Support
Barges."   Shakir does not provide the Work Releases, so her
inclusion of the start date for each of the three vessels is a
conclusory factual statement and renders the summary inadmissible,
and, as noted, the invoices are incomplete because Cashman
submitted the associated 213 (see Exhibit I for an example of a
complete invoice for the JMC 95), while BP submitted JV000135, but
not the accompanying page.  As a final argument, Defendants assert

---

[14] Raising a fact issue, Defendants discuss the very
different interpretations of "standby" in testimony of various
individuals involved in this suit.  #124 at pp. 11-12.

that Exhibit B and the accompanying documents are not relevant and should be excluded because BP has not alleged any damages to these support vessels.

### 3.  Lucier Declaration and Attached Exhibits

Lucier declares that she is fully competent and has personal knowledge of the facts stated in her declaration, that she is a partner in Andrews Kurth, LLP, that she represents BP in this litigation, that the attached Bates-labeled exhibits with the prefixes JV, DAS, LAD, and DeHart were produced by one of the Defendants during discovery, while the remainder were used in depositions and bear their deposition exhibit labels, and that all forty exhibits are true and correct copies of the documents referenced, except where indicated.

Objecting, Defendants contend that Lucier fails to show how she has personal knowledge of the facts set forth in her declaration, but, like Shakir, she does not show that her representation gives her personal knowledge of any of the documents she attaches.

Defendants then identify particular documents and cite specific reasons why they are inadmissible. Defendants claim that Exhibit 81, an email from J. Cheramie to L. Dragna, is inadmissible hearsay seeking to prove the truth of the matter asserted regarding redelivery of the Big Gulps. Exhibit 19, another email from Cheramie to Dragna regarding the redelivery of the Little Gulps, is

-23-

similarly hearsay.  As discussed previously, Exhibit 24, the printout from BP's SAP System of Payments Allegedly Made by BP to Cashman, is inadmissible because BP tries to authenticate it through Fairchild's inadmissible declaration.  BP purposefully misrepresents that Andrew Saunders verified this document at his deposition, when actually Saunders only agreed with BP's attorney that the spreadsheet is what counsel represented it to be and testified that he could not confirm the numbers in the spreadsheet. Ex. J, p. 106 l. 12–p. 108 l. 12.  Because it is not authenticated, it is inadmissible hearsay and must be excluded.  Furthermore, as discussed *supra*, the spreadsheet is not what BP represents it to be, i.e., all payments made by BP to Cashman, so it is not relevant and should be excluded under Federal Rules of Evidence 401 and 403. Last, Exhibit 26, a letter from R. Talbott to A. Saunders regarding executed audit rights, is inadmissible hearsay.  If it purports to be BP business records, it lacks authentication.  Moreover, the document is incomplete and inaccurate, insist Defendants.

### IV.  BP's Response (#133)

Citing numerous cases (#133 at p. 2 n.5), BP responds that the motion to strike should be treated as an objection under Federal Rule of Civil Procedure 56(c)(2)(titled "Objection That A Fact Is Not Supported by Admissible Evidence"), under which the standard of review is "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be

-24-

admissible in evidence," and not, as Defendants argue, that "summary judgment evidence must be properly authenticated and otherwise admissible." BP contends that Defendants fail to allege that BP has offered evidence that cannot be presented in admissible form. Moreover, the Court has sound discretion to overrule their objections. Furthermore, because this case is to be tried to the bench, the Court has greater discretion to weigh the evidence, disregard inadmissible evidence, not indulge in improper inferences, or consider irrelevant evidence than if it were a jury trial.

## A.  Fairchild Declaration

Defendants' assertion that Fairchild's declaration is not based on personal knowledge and its exhibit is unauthenticated hearsay is unfounded and should be overruled, argues BP. She has shown that she is a BP employee with personal knowledge of BP's record-keeping system ("Accounting System"), including procedures for recording payments made to vendors for services provided to BP during the *Deepwater Horizon* response, that in the ordinary course of business BP records payments to response vendors like Cashman in its SAP Accounting System, that in the ordinary course of business those payments are duly recorded in the program at or near the time the payments are made, and that the exhibit to her declaration (the

"Payment Exhibit"[15]) is an export from the Accounting System and demonstrates that BP paid Cashman more that $62 million relating to the invoices Cashman submitted for barge and skimming services pursuant to the MSC.  BP summarizes, "Based on these averments alone, the Court can reasonably infer that Ms. Fairchild has adequate personal knowledge to provide competent testimony to authenticate and lay a business records foundation for the Payment Exhibit" and "Defendants' objection should be overruled."  #133 at p. 4.  *See U.S. v. Herndon*, Civ. A. No. C-11-318, 2012 WL 4718622, at *4 (S.D. Tex. Aug. 8, 2012)("'[A]n affidavit can adequately support a motion for summary judgment when the affiant's personal knowledge is based on a review of her employer's business records and the affiant's position with the employer renders her competent to testify on the particular issue which the affidavit

---

[15] The Payment Exhibit provides information that reflects (1) BP input into the Accounting System at or near the time the payments were made, (2) BP input into the Accounting System as part of its regular practice of recording payments made to response-related vendors, and (3) BP maintenance of the information in the regular course of operating its response activities for purposes of Federal Rule of Evidence 803(6).  *See United States v. Ned*, 637 F.3d 562, 569 (5th Cir. 2011)(a record is admissible where the proponent shows "it was (1) 'made at or near the time by, or from information transmitted by, a person with knowledge,' (2) 'kept in the course of a regularly conducted business activity,' and (3) 'it was the regular practice of that business activity to make the [record].'"), and *Martinez v. Ford Motor Co.*, No. SA:14-CV-376-DAE, 2014 WL 6680521, at *3 (W.D. Tex. Nov. 25, 2014)("[B]ased on his extensive experience with [defendant] and its record-keeping practices, [the affiant] has sufficient personal knowledge to identify and interpret the records Defendant relies upon.").

concerns.'"), *quoting Carson v. Perry*, 91 F.3d 138, No. 95-40551, 1996 WL 400122, at *1 (5th Cir. June 6, 1996)(per curiam).

BP highlights the fact that while Defendants object to the Court's considering the Payment Exhibit, they do not contest the fact that BP paid Cashman over $62 million for its services in the response.  BP contends that Cashman's own documents corroborate and confirm the specifics of the Payment Exhibit.  #113, Ex. 1 at 6; Ex. 2 at 6.   BP rejects as absurd Defendants' objection that the Payment Exhibit should be ignored because it contains irrelevant information.  Moreover, BP's First Amended Complaint (#112 at pp. 1-2) clearly states, "BP hired Defendants to provide barges, tug boats, cranes, skimmers, and other equipment to separate crude oil from water in the Gulf of Mexico," and that BP paid Defendants more than $68 million in response to Defendants' invoices for those services.

Nevertheless, "[i]n an abundance of caution" and "to avoid the waste of judicial or party resources resolving admissibility of" the Payment Exhibit, even though "the Fairchild Declaration, at the very least, shows that the Payment Exhibit could be presented in admissible form at trial in accordance with Rule 56(c)," BP has supplemented its summary judgment evidence with a declaration from Stephen Holcomb ("Holcomb") (#133-2), Operations Accounting Manager for the Gulf Coast Restoration Organization, the division of BP that accounts for payments made to vendors who assisted in the

-27-

*Deepwater Horizon* response.   #133 at p.5 & n.15.   "Unequivocally authenticating and laying the business records foundation for the Payment Exhibit" pursuant to Federal Rule of Evidence 901(b)(1)[16] and 901(b)(9), according to BP,[17] Holcomb declares that he personally generated the Payment Exhibit, explains how the Accounting System works, states that he regularly generates reports from it, including the Payment Exhibit in dispute that was an exhibit to the declaration of Elizabeth Holcomb Fairchild, and that it shows that BP paid Cashman $62,925,317.30.

Regarding Defendants' objections to the Lucier declaration, BP points out that with regard to the deposition exhibits it declares that each has already been authenticated by a fact witness and provides a citation to the supporting testimony.   Lucier Decl., ¶ 7 and Exs. 1,4,9,13-16, 24, 31, 34.   Nothing in the declaration purports to independently authenticate any of these exhibits. Moreover, other than Ex. 24, Defendants do not object to the

---

[16] Rule 901(b)(1) states that testimony of a witness with knowledge that an item is what it is claimed to be satisfies that authentication requirement.   Rule 901(b)(9) provides that "[e]vidence describing a process or system and showing that it produces an accurate result" also meets the requirement.   *See also Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015)("In the case of an exhibit purported to represent an electronic source . . . testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it, may be enough to authenticate it.").

[17] Rule 901(b)(9) provides, "Evidence describing a process or system and showing that it produces an accurate result" satisfies the authentication requirement.

competence of any of the witnesses who authenticate them. Furthermore, insists BP, there is no rule that forbids an attorney from supporting a summary judgment with an affidavit. *See, e.g., OFI Int'l, Inc. v. Port Newark Refrigerated Warehouse*, No. 2:11-CV-06376 WJM, 2015 WL 140134, at *3 (D.N.J. Jan. 12, 2015)(filing documents pursuant to an attorney declaration that they are true and accurate copies of the documents produced in discovery "is a well-established practice"); *Shell Trademark Management BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co.*, 642 F. Supp. 2d 493, 510 (W.D.N.C. 2009)("An attorney is an appropriate source to authenticate documents received in discovery."), *citing Commercial Data Servers, Inc. v. IBM*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003).

Furthermore, "documents produced in response to discovery requests are admissible on a motion for summary judgment since they are self-authenticating and constitute the admissions of a party opponent.  An opposing party may not subsequently challenge an attorney's ability to authenticate documents attached to her declaration that were previously provided by the opposing party without objection as to their authenticity." *Evanston Ins. Co. v. Westchester Surplus Lines Ins. Co.*, 546 F. Supp. 2d 1134, 1139-40 (W.D. Wash. 2008).  As BP's attorney from the commencement of this case, Lucier is clearly competent to inform the Court how each exhibit was authenticated. She explains which documents were produced by Defendants during discovery, as is common practice for

attorneys.  Thus as an attorney, she is competent to declare that she received the documents from Defendants in discovery, and thus the documents are self-authenticating.   The exhibits include documents and emails generated by the parties, admissible as party-opponent admissions under Rule of Evidence 801(d) and business records under Rule 803(6), images of Defendants' websites, certified deposition and audio transcripts, the governing contract and Work Releases, and some witnesses' telephone records.  *See, e.g., Telewizja Polska USA v. Echostar Satellite Corp.,* No. 02 C 3293, 2004 WL 2367740, at *5 (N.D. Ill, Oct. 15, 2004)("[T]he contents of [a party's] website may be considered an admission of a party-opponent, and are not barred by the hearsay rule."); *Van Westrienen v. Americontinental Collection Corp.*, 94 F. Supp. 2d 1087, 1109 (D. Or. 2000)("[T]he representations made by defendants on the website are admissible as admissions of the party-opponent under FRE 801(d)(2)(A).").   Even if they were not properly authenticated, BP points out that they satisfy Rule 56(c)(2) because they are capable of being offered in admissible form at trial because BP's and Defendants' witnesses can testify that these documents are what they purport to be.   BP emphasizes that Defendants have not alleged that any of them are fake.

Defendants argue that Exhibits 18, 19 and 26 to the Lucier declaration are inadmissible hearsay.  BP responds that Exhibits 18 and 19 are emails sent by BP employees on August 5, 2010 to notify

-30-

Defendants of BP's present intent to redeliver the Big and Little Gulps respectively. *See Atrium Companies, Inc. v. ESR Associates, Inc.*, Civ. A. No. H-11-1288, 2012 WL 5355754, at *6 (S.D. Tex. Oct. 29, 2012)("Ordinarily, a party that seeks to introduce an email made by an employee about a business matter under [the business records hearsay exception in Rule 803(6)] must show that the employer imposed a business duty to make and maintain such a record."), [citing *Cantxx Gas Storage, Ltd. v. Silverhawk Capital Partners, LLC*, Civ. A. No. H-06-1330, 2008 WL 1999234, at *12 (S.D. Tex. May 8, 2008)("Courts examine whether it was the business duty of an employee to make and maintain emails as part of his job duties and whether the employee routinely sent or received and maintained the emails.").] However, at least one court from this circuit has admitted email that was prepared 'during the course of ordinary business,' without addressing whether the employer was under a duty to make and maintain those communications."), *citing Pierre v. RBC Liberty Life Ins.,* Civ. A. No. 05-1042-C2071829, at *2 (M.D. La. July 13, 2007)("[C]onsidering the emails at issue were prepared by [Defendant's] employees during the ordinary course of business, the Court finds that the emails fall within the exception to the hearsay rule provided in Fed. R. Evid. 803(6)."). If the emails do not qualify as business records, they are able to be admitted at trial when accompanied by an affidavit or testimony from a person with knowledge about their origin.

Exhibit 26, a letter Cashman received showing the results of BP's audit, is also admissible as a business record.   As with Exhibits 18 and 19, BP's Rule 36(b)(6) representative can provide the requisite support.

Alternatively, asserts BP, all three exhibits are admissible to the extent that they are not hearsay, i.e., not being offered for the truth of the matter asserted.  Fed. Rule Evid. 801(c). Exhibits 18 and 19 may be offered to show that Defendants had notice of BP's intention to redeliver the Gulps on August 5, 2010. Exhibit 26 may be offered to support BP's statement that it "promptly notified Defendants of the audit results that revealed substantial overcharges."  #123 at p. 21.[18]

The Court agrees with BP that the Lucier declaration and exhibits are admissible.

Regarding Shakir's declaration, BP points out that contrary to Defendants' assertion that she claims to have "personal knowledge

---

[18] The Court observes that in *U.S. v. Central Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984), the panel opined, "Evidence introduced to prove merely that notice was given is not offered to prove the truth of the matter asserted therein and, therefore, is not hearsay." *Id.*, citing *United States v. Jefferson*, 650 F.2d 854, 858 (6th Cir. 1981).  Moreover "a statement does not fall under the hearsay rule if it was offered, not to prove the truth of the matter asserted, but to prove that the statement was made." *Snyder v. Whittaker Corp.*, 839 F.2d 1085, 1090 (5th Cir. 1988)(in a products liability suit against a boat manufacturer the court found that Snyder used a memorandum to show that Desco Marine had notice that the fiberglass laminate lacked stiffness and would require extra support, i.e., to prove that certain statements were made by the author of the memorandum to the manufacturing division).

of the evidence of this case and of documents to which she testifies" (#124 ¶ 9), the declaration actually asserts that the declarant has personal knowledge of the two demonstrative summary spreadsheets (Exhibits A and B) that she, herself, created and the underlying documentary evidence (Exhibits A-1, A-2, B-1, and B-2) on which she relied in creating these damages summaries, each of which was either authenticated by a witness during deposition or produced by Defendants during discovery.   Thus Defendants' objections should be overruled.

Defendants erroneously rely on Federal Rule of Evidence 1006 in objecting to the damages summaries, since the Court may consider them as purely demonstrative exhibits under Federal Rule of Evidence 611(a), provided for the convenience of the Court to assist in the calculations of damages and to help it sort through voluminous summary judgment evidence for each of Cashman's overcharges.   This underlying evidence includes the amount of each overcharge, the date of service for which an overcharge was made, the names of the vessels involved, and the date the respective July 29 Work Release became effective for each vessel package.   These damages summaries should not be excluded simply because they provide BP's version of the case and are argumentative or persuasive.   *See Posada-Rios*, 158 F.3d at 869 ("We are satisfied that Fed. R. Evid. 611(a) afforded the district court discretion to allow the government to use the summary charts and organizational

charts" as "'pedagogical' devices intended to present the government's version of the case . . . with limiting instructions" that the charts were not evidence, but devices to help the jury follow the evidence.); *U.S. v. Ramos*, 71 F.3d 1150, 1154-55 (5th Cir. 1995), *cert. denied sub nom. Castorena v. U.S,*, 517 U.S. 1227 (1996).   It is well established that a demonstrative aid can present the evidence in a manner that is argumentative or favors the proponent's position and the Court has wide discretion to consider it.   Regardless, the underlying evidence upon which the summaries are based is admissible.[19]

Finally, BP insists that all of the exhibits were either authenticated during a deposition or produced by Defendants during discovery.   Attorney Shakir is competent to submit a declaration on these facts.

### V.   Defendants' Reply (#135)

Defendants argue that while Federal Rule of Civil Procedure 56(c)(4) may allow BP to show it could submit evidence in a form admissible at trial, BP cannot rely on affidavits or declarations

---

[19] While Defendants have objected that each invoice submitted to BP was composed of two pages, but BP only submitted the first. BP responds that with the exception of one invoice, it submitted them to the Court as Defendants produced them to BP.   Furthermore that they were incomplete does not make the inadmissible; Defendants may submit whatever material they believe is needed to make them complete under Federal Rule of Evidence 106 ("If a party introduces . . . part of a writing . . ., an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.").

that do not meet the requirements of that provision.  BP fails to fix the deficiency in Fairchild's affidavit, as establishing that Fairchild has personal knowledge requires more than reciting facts about the explosion and stating that she worked for BP; she must connect her position at BP with the facts to which she testifies, but BP fails to provide that information.  Thus her affidavit is inadmissible.

In addition, with the documents attached to Stephen Holcomb's affidavit BP is trying to claim damages to three support vessels, LAD 9, CR 107, and JMC 95, that it has not sought in its pleadings (#12) or set forth in its initial disclosures (#51).  It has only pleaded damages relating to the eight Gulps and misapplication of the standby rate.  #12 at ¶¶15-40.  BP's submission of a declaration from attorney Joseph Buoni (#133-1) to authenticate with "Customer History" attached as Exhibit 1 and an email from Jacqueline Bernadeau to Ray Riddle and Kim Shaughnessy with an attached excel spreadsheet entitled "Cashman Equipment Corp. Accounting Report Project BP Oil Spill Clean Up Joint Venture JPBS HC2010-001 to HC2010-026, both produced by Cashman and relate to these unpleaded support vessels, are not relevant and are inadmissible.

Regarding BP's argument that Shakir-created damage summaries are demonstrative exhibits for the convenience of the Court and that Shakir has personal knowledge of them because she created

them, Defendants object that Shakir's declaration is inadmissible because it does far more than authenticate the exhibit:  (1) it provides testimony as to what the alleged damages are ("I compared these documents and calculated the difference between what should have been charged according to the Work Releases and what was charged according to Cashman's invoices" (declaration p. 1) and (2) decides how to apply the contractual undefined term, "standby," in deciding each of the vessels was on "standby" as of the date of the effective date of the Work Releases.  There is no evidence that the vessels did no "Work" after the date the Renewed Work Releases were executed.  Defendants conclusorily state that even BP's auditors did not apply "standby" in this way.  Furthermore, they insist that the damages summaries, themselves, are more than demonstrative aids.  If they become part of the summary judgment record, they are far more than demonstrative exhibits and are inadmissible because they provide a date upon which each Gulp was purportedly in decontamination or not skimming and apply the standby rate to these days as of the date that the relevant Renewed Work Release was executed; but Shakir fails to demonstrate that the Gulps were in decontamination or otherwise skimming or to provide any basis for applying the standby rate as of the effective date of the Releases, and also fails to state where she obtained such information.  Obviously she has no personal knowledge as to whether the vessels were working, or in decontamination, or standing by at any given

time.

## Court's Decision

A.  Standard of Review

Rule 56 was amended in 2010 and the revised version applies here.  In *Cutting Underwater Technologies USA, Inc. v. Con-Dive, LLC*, Civ. A. No. 09-387, 2011 WL 1103679, at *3 (E.D. La. Mar. 22, 2011), *aff'd*, 671 F. 3d 512 (5th Cir. 2012), the district court opined,

> Rule 56 of the Federal Rules of Civil Procedure allows a
> party to provide an affidavit to support or oppose a
> motion for summary judgment.  *See* Fed. R. Civ. P.
> 56(c)(1)(A).  Such affidavits, however, "must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant . . .
> is competent to testify on the matters stated."  *Id.*
> 56(c)(4).  Prior to December 1, 2010, the proper method
> by which to attack an affidavit was by filing a motion to
> strike.  *See, e.g.*, Rushing v. Kan. City S. Ry. Co., 185
> F.3d 496, 506 (5th Cir. 1990), *superseded on other
> grounds by* Fed. R. Evid. 103(a); *see also* 10B Charles
> Alan Wright & Arthur R. Miller, *Federal Practice and
> Procedure* § 2738 (3d ed. 2004).  Under the now-applicable
> Rule 56(c)(2)["[a] party may object that the material
> cited to support or dispute a fact cannot be presented in
> a form that would be admissible in evidence"] however, it
> is no longer necessary for a party to file such a motion;
> instead, the party may simply object to the material.
> *See* Fed. R. Civ. P. 56 advisory committee's note to 2010
> amendments ("There is no need to make a separate motion
> to strike.  In light of this change, [Defendant's] motion
> to strike will be treated as an objection.).

The advisory note to the revised Rule 56(c)(2) states,

> The objection functions much as an objection at trial,
> adjusted for the pretrial setting.  The burden is on the
> proponent to show that the material is admissible as
> presented or to explain the admissible form that is
> anticipated.  There is no need to make a separate motion

to strike.   If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Thus the Court agrees that the motion to strike is properly viewed as an objection to the evidence and applies to it the new standard for Rule 56(c)(2).  The Court concludes therefore that BP bears the burden of proof to demonstrate that its challenged summary judgment evidence is either admissible as presented or to explain what form it anticipates it will employ to make it admissible.

Furthermore, Fifth Circuit courts have allowed parties to cure the defects of affidavits by filing amended versions.  *Elwakin*, 901 F. Supp. 2d at 738-39 (citing *Inter alia U.S. v. Filson*, 347 Fed. Appx. 987, 991 (5th Cir. 2009)(permitting refiling of affidavit which properly authenticated records)); *Johnson v. New South Federal Savings Bank*, 344 Fed. Appx. 955, 956-57 (5th Cir. 2009)(finding that supplemental affidavit cured defects regarding amount of taxes paid in a certain year); *Cooper v. Upshur County Constable's Office,*, Civ. A. No. 6:07CV211, 2008 WL 2035809, at *4 (E.D. Tex. May 12, 2008)(finding on summary judgment that party's submission of amended affidavits in response to opposing party's motion to strike permitted consideration of affidavits' content); *Contreras v. Suncast Corp.*, 237 F.3d 756 (7th Cir. 2001)(finding that district court allowing party to resubmit affidavits was not reversible error)).  *See also Lackey v. SDT Waste and Debris*

-38-

*Services*, Civ. A. No. 11-1087, 2013 WL 5772325, at *17 (E.D. La. Oct. 23, 2013)("[C]ourts have found that a party which takes prompt remedial measures to correct defects in an affidavit may be entitled to have those affidavits 'relate back' to the evidence sought to be introduced.").

Accordingly, the Court finds that BP's supplemental filing of Holcomb's declaration cures any problems with Fairchild's declaration and failure to provide facts relating her position at BP to accounting at BP, although the Court finds Defendants' challenges to it to be questionable.

The Court finds that Defendants' objection that the attachments of Fairchild's and Holcomb's declarations regarding damages include payments made to Cashman for equipment, barges, and vessels for which BP has failed to plead a cause of action or identify any damages, is meritless. A review of the First Amended Complaint (#12) demonstrates that BP has pleaded both the three causes of action (breach of contract by overbilling, money had and received, and unjust enrichment) and damages regarding the three non-Gulp vessels and other equipment. The complaint's "Introduction" asserts,

> BP hired Defendants to provide barges, tug boats, cranes skimmers, and other equipment to "separate crude oil from water in the Gulf of Mexico." Defendants submitted invoices totaling over $68 million to BP of which BP paid Defendants the entire $68 million. After conducting a routine audit of Defendants' invoices, it was discovered that Defendants improperly invoiced BP for over $12 million in overcharges.

In paragraphs 14 and 15 BP alleges that it entered into the MSC (Exhibit A to #12) with Defendants "to provide barges, tug boats and other equipment" and that Articles 9.01 and 9.02 of the MSC "provide that the compensation rate for the barge and tug rentals will be set forth in Exhibit C to the Contract and the subsequent Work Releases."  The complaint in ¶ 16 then points out that the Work Releases "identified *the specific barge and accompanying skimming equipment (collectively, the "Package")*, the scope of work, the expected start and end dates, *and the applicable compensation rates*. [emphasis by the Court]"  Thus the "*Packages*" contained vessels and equipment other than the Gulps and the stated rates for each Package included them.  Paragraphs 17-20 present the following: identification of the initial (pre-July 29) Work Release "Packages" for each of the eight Gulps and the particular barge out of eight that accompanied each Gulp; a statement that each initial Work Release included a one-time Mobilization Rate and a Daily Rate to be charged for daily use of each "Package" while the Work Release was in effect"; a statement that "[e]ach initial 'Big Gulp' Work Release covered a 300-foot long modified skimming barge and tug boat Package and allowed Defendants to invoice BP at a Daily Rate of $97,000 for the Package"; and a statement that "[e]ach initial 'Little Gulp' Work Release covered a 180-foot long modified skimming barge and tug boat Package and allowed Defendants to invoice BP at a Daly Rate of $75,000 for the Package."  According

to the Amended Complaint, BP and Defendants negotiated and executed new terms for a new set of Work Releases for the same eight Packages on or about July 29, 2010 (Exhibit C), with the Modified Daily Rate (10% less than the Daily Rate in the initial Work Release) and the Standby Rate (50% of the Modified Daily Rate), resulting in the Big Gulp Package Daily Rates being "reduced from $97,000 per day to $87,3000 per day when the Package was actively skimming and $43,650 per day when the Package was on Standby or undergoing Contamination." #12, ¶¶ 21-11, 24.  Similarly, the "'Little Gulp' Package Daily Rates were reduced from $75,000 per day to $67,500 per day when the Package was actively skimming and $33,750 per day when the Package was on Standby or undergoing Decontamination." *Id.* at¶ 25.  In addition, with an example, BP alleges that during the audit, Defendants provided the auditors with Vessel Logs from the tug boats that accompanied the Big and Little Gulp Packages, which "detail[ed] the daily activities of the tug boats and reveal[ed] that the Packages were on Standby or undergoing Decontamination on a number of the days when Defendants invoiced BP at the Modified Daily Rate, rather than the Standby Rate."  It is more than reasonable to infer that those payments made to Cashman that were not for use of the Gulps, recorded in the spreadsheet attached to Fairchild's declaration which Defendants call "misrepresentations" that make the document "inaccurate," "irrelevant," and "inadmissible," were the payments made for the

non-Gulf vessels and equipment included in the Packages, which Defendants erroneously assert were never pleaded.

The Court concurs with BP's response regarding the Lucier declaration and its exhibits, which Lucier demonstrates have been independently authenticated by fact witnesses.  The Court agrees that as an attorney, Lucier is permitted to submit an affidavit or declaration supporting BP's summary judgment evidence.  Moreover, the Court agrees that as a matter of law the documents challenged by Defendants that were produced in response to discovery requests, such as the emails, are admissible as admissions of a party opponent and/or as business records under the Rule 801(d), and as Rule 806(6) exceptions to the hearsay rule.

For the reasons stated, the Court

ORDERS that the objections contained in Defendants' motion to strike are OVERRULED and the motion is DENIED.

**SIGNED** at Houston, Texas, this  8<u>th</u>  day of  <u>April</u> , 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE