United States District Court
Southern District of Texas
**ENTERED**
April 29, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP EXPLORATION & PRODUCTION INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § | Civ. A. H-13-3046 |
| CASHMAN EQUIPMENT CORPORATION, LAD SERVICES OF LOUISIANA, LLC, AND CASHMAN EQUIPMENT CORP. AND LAD SERVICES, A JOINT VENTURE, | § § § § § | ADMIRALTY CASE-Rule 9 |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above referenced cause, alleging breach of contracts by overbilling relating to Plaintiff BP Exploration & Production Inc.'s ("BP's") clean-up response to the Deepwater Horizon oil spill in the Gulf of Mexico, is Defendant Cashman Equipment Corporation's ("Cashman's") objection (instrument #97) pursuant to Federal Rule of Civil Procedure 72 to the magistrate judge's order (#96) regarding Cashman's motion for leave to file its second supplemental and amended answer, affirmative defenses and counterclaim (#73).

On March 17, 2015 in #96 United States Magistrate Judge Frances Stacy granted in part and denied in part (1) Defendant LAD Services of Louisiana, LLC's ("LAD's") motion for leave to file its second amended answer and affirmative defenses (#72); (2) Cashman's motion for leave to file second supplemental and amended answer,

affirmative defenses and counterclaim (73); and (3) Cashman Equipment Corp. & LAD Services, a Joint Venture 's ("Joint Venture's") motion for leave to file second amended answer and affirmative defenses (#74),[1] on the same grounds, i.e., allowing Defendants to assert, as an affirmative defense, "discussion" as that term is understood in Louisiana law,[2] but denying them leave to amend to include affirmative defenses or counterclaims based on "set off" because the "broad and expansive language in the Settlement Agreement in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*, MDL 2179 [#75, Ex. C, §§ 1.2.2; 1.3.1.2; 1.3,1.10; 1.3.1.12; 8.2.4; 10.1; and 10.2] precludes the filing of such "set-off/ claims and/or affirmative defenses in this forum."[3] Cashman objects only to the part of the ruling denying it leave to file its proposed "set off"

---

[1] Cashman is a Massachusetts marine services company, with its principal place of business in Massachusetts, and rents and sells barge and marine equipment; LAD is a steel fabrication facility specializing in fabricating vessels and a Louisiana limited liability company with its principal place of business in Louisiana; and Joint Venture, whose members are Cashman and LAD, is a Louisiana joint venture.  The Court has both admiralty and diversity jurisdiction here.  These entities provided barges, tug boats, and other equipment to separate crude oil from water during the clean-up of Macondo oil spill in the Gulf of Mexico.

[2] The Court observes that in its Opinion and Order of September 15, 2015 (#141 at pp. 39-41)  this Court held that the Louisiana affirmative defense of discussion does not apply here.

[3] The Settlement Agreement has been approved by the Honorable Carl Barbier in the MDL action.  Copy of Judge Barbier's Order, #75, Ex. B.

counterclaim for "business economic loss"[4] under the Settlement Agreement (copy attached to Cashman's motion for leave to file, #73).   Neither of the other Defendants has objected to the Magistrate Judge's order.

### Standard of Review

Title 28 U.S.C. § 636(b)(1)(A) permits a district judge to

> designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

Moreover the statute further allows the district court to review

---

[4] *See* Settlement Agreement, #75, Ex. B. Exhibit C does not include over 900 pages of exhibits attached to the Settlement Agreement.  The complete document with all exhibits can be obtained at Civil Action No. 12-970, MDL No. 2179 (E.D. La. May 3, 2012) instrument # 6430 or at the following web site: http://www.deepwaterhorizoneconomicsettlement.com/docs/Amended-Settlement_Agreement_5.2.12_optimized.pdf#search.  *See* #75 at p.4 n.2.
  The Economic and Property Damages Settlement Class definition includes entities that are within the "geographical descriptions in . . . Section 1.2 and their claims meet the descriptions of one or more of the Damage Categories described in Section 1.3," unless expressly excluded.  Service businesses operating out of the Gulf Coast Areas, such as Cashman, are entities within the class definition.  *Id.* ¶ 1.2.2 ("service businesses with one or more full-time employees (including owner-operators) who performed their full-time services while physically present in the Gulf Coast Areas or Specified Gulf Waters as any time from April 20, 2010 to April 16, 2012."  Cashman claims it meets the "Economic Damage Category" in ¶ 1.3.1.2 ( Loss of income, earnings or profits suffered by Natural Persons or Entities as a result of the **DEEPWATER HORIZON INCIDENT** . . . ."

and reconsider any pretrial matter decided by the magistrate judge "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The reviewing district court may determine that a factual finding is "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *U.S. v. Stevens*, 487 F.3d 232, 240 (5th Cir. 2007). The district court reviews the magistrate judge's legal conclusions *de novo*. *Lahr v. Fulbright & Jaworski, LLP*, 164 F.R.D. 204, 208 (N.D. Tex. 1996); *Tolan v. Cotton*, H-09-1324, 2015 WL 5332171, at *1 (S.D. Tex. Sept. 14, 2015). In the "vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous," the standard of review is abuse of discretion. *Lahr*, 164 F.R.D. at 208; *Bancroft Life & Cas. ICC, Ltd. v. FFD Resources II, LLC*, 884 F. Supp. 2d 535, 537-38 (S.D. Tex. 2012). The party who appeals or objects to the magistrate judge's order must demonstrate how the order is reversible under the relevant standard of review. *Bancroft Life*, 884 F. Supp. 2d at 538.

A magistrate judge's order on a party's motion for leave to amend is a nondispositive matter governed by Federal Rule of Civil Procedure 72(a). *Talbert v. Am. Risk Ins. Co.*, 405 Fed. Appx. 848, 851 (5th Cir. 2010). Under Rule 72(a), when the magistrate judge's order decides a nondispositive motion, "[a] party may serve and file objections to the order within 14 days

after being served with a copy." The district judge may "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Even where the 14-day rule is not met, it is not jurisdictional and the court may "consider arguments not raised in a timely objection." 12 Wright & Miller, *Fed. Prac. & Proc.* § 3070.1 & n.20 (2d ed., updated April 2012).

### Cashman's Objection (#97)

Asserting that Magistrate Judge Stacy erred as a matter of law, Cashman argues that while the Settlement Agreement does bar pursuit in this forum of some of its claims for economic loss allegedly owed to Cashman by BP after the Macondo Oil Spill, others are "Expressly Reserved" to the class under the Settlement Agreement and are not subject to the mandate that they be pursued through the settlement program in MDL 2179.

> Section 1.3.1.12 of the Settlement Agreement provides,
>
> Businesses/Employers in Support Services to Oil and Gas Industry: As more fully described in Exhibit 16 and Sections 5.10 below, businesses and employers in the "Support Services to Oil and Gas Industry," described in Exhibit 16, may submit Claims for (i) non-moratoria business interruption from Support Services to Oil and Gas Industry activities, and (ii) non-oil and gas industry Economic Damages arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident, except for moratoria claims, and may pursue all other discovery permitted under other aspects of the Settlement.

> Section 8.2.4 mandates that class members who fail to timely

opt out of the class are bound by the decision and "shall be

-5-

permanently and forever barred from commencing, instituting, maintaining or prosecuting any action based on any Released Claim against any Released Parties in any court of law or equity, arbitration tribunal or administrative or other forum."

The Settlement Agreement's very broad Release of claims, including "all claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident," is found in §§ 10 and 10.1, but § 10.1 clearly states that "the Release does not apply to, and the term Released Claims does not include, Expressly Reserved Claims." It continues, repeating § 3.3 's mandate that

> Released Claims shall not include Expressly Reserved Claims which means the following claims that are not recognized or released under the Agreement and are reserved to the Economic Class Members: . . . (3) claims of Natural Persons and Entities for Moratoria Losses . . . . and (5) "Claims for Economic Damage suffered by Entities or employees (to the extent they alleged Economic Damage based on their employment by such Entity during the Class Period) . . . .

"Expressly Reserved Claims" include "Claims of Natural Persons and Entities for **MORATORIA LOSSES**"under § 3.3, and "Claims for Economic Damage suffered by Entities or employees (to the extent they alleged Economic Damage based on their employment by such Entity during the Class Period)" under § 3.5.

Cashman agrees with BP that its claims for non-moratoria business interruption must be pursued through the Settlement Agreement pursuant to §§ 1.3.1.12 and 8.2.4, but it asks the Court

to set aside part of the magistrate judge's order and to allow him to amend his complaint to assert as affirmative defenses/counterclaims, his "Expressly Reserved" claims for "Moratoria Losses" and Economic Damages."

### BP's Response (#104)

In response, BP argues the following: (1) because Cashman did not previously make its claim that the claims against BP are "Expressly Reserved Claims," as defined in the Settlement Agreement, Cashman has waived the argument[5]; (2) even if it had not waived the argument, Cashman's motion and its proposed amended answer do not contain an "Expressly Reserved Claim," but instead state a claim for "business economic loss . . . under the OPA and/or the Economic and Property Damages Settlement Agreement as a

---

[5] *Citing, e.g., Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir. 1994)(In enacting the Magistrate Judge Act, upon which Rule 72 is based, "Congress intended that the Magistrate Judge hear all arguments of the parties and take all evidence; and, accordingly, holding that while the Act provides for de novo review by the district court if timely objections are filed, it does not allow the parties to raise at the district court stage new evidence, argument, and issues that were not presented to the magistrate Judge-'absent compelling reasons.'"), *cert. denied*, 513 U.S. 1163 (1995); Pick v. Am. Med. Sys., Civ. A. No. 94-1729, 1997 WL 162061, at *1 (E.D. Las. Apr. 3, 1997)("A party is not entitled to raise new theories or arguments in its objections [to the magistrate's order] that the party did not present before the magistrate.")(*citing Cupit*), *aff'd*, 198 F.3d 241 (5th Cir. 19991Cashman responds that it raised claims for economic losses under the Settlement program and under the under the Oil Pollution Act of 1990("OPA"), 33 U.S.C. § 2701, *et seq.*, in its proposed pleading, #73 Ex.1 at ¶¶ 102, 104, 107.

result of the Macondo Oil Spill [#73, Ex. 1, §§ 101, 107[6]]," which is clearly released by the Settlement Agreement and by Judge Barbier's settlement approval order; (3) even if Cashman's set-off claim did include Expressly Reserved Claims (an allegation that BP rejects), the claims are futile because it contends that Cashman is not an "Entity in the Oil and Gas Industry" under the terms of the Settlement Agreement[7]; and (4) Cashman's claims are barred by the

---

[6] Section 101 states,

On December 21, 2012, United States District Court for the Eastern District of Louisiana issued an Order certifying the Economic and Property settlement Class and granting final approval of the Economic and Property Damages Settlement Agreement between BP and the settlement class, through which class members such as Cashman could assert business and economic loss claims to be administered by the Claims Administrator charged with administering the Settlement Agreement.

Section 107 reads,

Defendant's counterclaim for damages under the OPA and/or the economic Damages Settlement Agreement as a result of the Macondo Oils Spill flows from the same occurrence giving rise to the contract(s) that is the basis for the captioned matter.

[7] The Settlement Agreement excludes entities on the "Oil and Gas Industry" from being class members.  #75, Ex. C. ¶ 2.2.4.5. Because Cashman states it is a class member, it cannot also be an entity in the Oil and Gas Industry under the Settlement Agreement.  BP emphasizes that Cashman's motion and proposed pleading do not assert a Moratoria Loss claim (as defined in the Agreement) or any other Expressly Reserved Claim, not its status as an entity in the Oil and Gas Industry.
Paragraph 38.92 of the Settlement Agreement (#75, Ex. C) defines "Moratoria Loss" as "any loss whatsoever caused by or resulting from federal regulatory action or inaction directed at offshore oil industry activity--including shallow water and deepwater activity--that occurred after May 28, 2010, including

three year statute of limitations under the OPA, 33 U.S.C. ¶ 2717(f)(1),[8] and mandatory pre-suit requirement that generally individuals and entities harmed by the oil spill must present their claims to the responsible part at least 90 days before the end of the three-year limitations period, *id.* § 2713.[9]

---

the federal moratoria on offshore permitting and drilling activities imposed on May 28, 2010 and July 12, 2010 and new or revised safety rules, regulations, inspection or permitting practices."

[8] An action for damages is barred under the OPA unless it its brought "within three years after

(A) the date on which the loss and connection of the loss with the discharge in question are reasonably discoverable with the exercise of due care, or

(b) in the case of natural resource damages under section 2702(b)(2)(A) of this titled, the date of completion of the natural resources damage assessment under section 2706(c) of this title.

[9] Once the claim is presented, § 2713 requires that the claimants wait until "each person to whom the claim is presented denies all liability for the claim, or . . . the claim is not settled by any person by payment within 90 days after the date upon which . . . the claim was presented," before filing suit against the responsible party. The purpose of the presentment procedure "'is to promote settlement and avoid litigation.'" *Gabarick v. Laurin Maritime (America), Inc.*, Civ. A. No. 08-4007, 2009 WL 102549, at *3 (E.D. La. 2009), *quoting Johnson v. Colonial Pipeline Co.*, 830 F. Supp. 309, 310 (E.D. Va. 1993)(emphasis added).
The period of limitations (§ 2717) and the presentment requirement (§ 2713) do not refer to each other and operate independently, so compliance with one will not "as a general rule" excuse noncompliance with the other, and "claimants may not ignore the 90-day waiting period simply because the period of limitations is about to expire." *Nguyen v. American Commercial Lines, LLC*, 805 F.3d 134, 143-44 (5th Cir. 2015). The Fifth Circuit noted that one court *Denehy v. Mass. Port Auth.*, 42 F. Supp. 3d 301, 308 (D. Mass. 2014), allowed the claimant to sue

BP insists that Cashman only now refers for the first time to claims for "Moratoria Losses" and for "Economic Damage suffered by Entities in the Oil and Gas Industry." Moreover it provides no factual allegations to show that it is an entity "in the Oil and Gas Industry," which is defined in § 2.2.4.5 of the Settlement

-----

the responsible party without waiting 90 days from the date of presentment because of an extenuating circumstance, i.e., the Coast Guard did not identify the responsible party until less than 90 days before the expiration of the limitations period. *Id.* at 143. The Fifth Circuit panel further observed, *id.* at 144, that Judge Barbier, in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 808 F. Supp. 2d 943, 965 (E.D. La. 2011), *aff'd sub nom. In re Deepwater Horizon*, 745 F.3d 157 (5ᵗʰ Cir. 2014), *cert. denied sub nom. Louisiana ex rel. Ballay v. BP Exploration & Production, Inc.*, 135 S. St. 401 (2014), allowed some unpresented claims to proceed in that court because of extenuating circumstances, i.e., impracticality:

> *Deepwater Horizon* involved over 100,000 individual claims in a multi-district litigation. While the court in that case declined to engage in the "impractical, time-consuming and disruptive" task of reviewing so many claims to determine, *inter alia*, presentment prior to allowing them to proceed, the claimants here number less than 300, making the task of reviewing their claims less arduous. *Id.* (noting that "[a] judge handling [a multi-district litigation] often must employ special procedures and case management tools."). Moreover, the court in *Deepwater Horizon* held that "presentment is a mandatory condition-precedent with respect to Plaintiffs' OPA claims," despite its decision not to review individual claims because of the number of claims involved. *id.*

The instant suit involves BP's suit for damages against three companies for breach of contracts and [alternatively] unjust enrichment for their failure to provide equipment for the cleanup response.

Agreement.[10]  BP points out that the Settlement Agreement excludes entities in the Oil and Gas Industry" from being class members in § 5.10.2.1.1.

The Settlement Agreement's broad release (#75, Ex. C, § 10.2) "include[s] all claims arising out of, due to, resulting from, or relating in any way to, directly or indirectly, the Deepwater Horizon Incident," expressly including those asserted under the OPA or other statutes.  Judge Barbier's order of final approval of the settlement in MDL 2179 states that the "Settlement Agreement shall be the *exclusive remedy* for any and all Released Claims by or on behalf of" class members (#75, Ex. B, ¶ 9) and that "the Court

---

[10] Section 2.2.4.5 explains,

Oil and Gas Industry, as identified in the NAICS codes listed on Exhibit 17, which includes, by way of example, firms engaged in:  extracting crude petroleum, natural gas or other hydrocarbons; drilling wells; preparing, maintaining or constructing petroleum or natural gas well-sites or other mineral extraction sites; mining; maintaining or constructing petroleum or natural gas pipeline, or distribution facilities; pipeline distribution of crude petroleum, refined petroleum, oil or natural gas; petroleum or natural gas refining or other mineral refining and/or manufacturing; manufacturing petroleum lubricating oil and grease, petroleum products, or other petroleum and coal products or chemical products derived from extracted minerals; merchant wholesaling of construction and mining (except oil well) machinery and equipment; wholesale distribution of oil well machinery, equipment and supplies; wholesale distribution of petroleum, petroleum products, other extracted minerals, chemical products produced from extracted or refined minerals, petroleum bulk stations and terminals, petroleum and petroleum products merchant wholesalers.

-11-

permanently bars and enjoins each Economic Class Member from commencing, filing, initiating, asserting, instituting, maintaining, consenting to and/or prosecuting any judicial . . . action against the Released Parties with respect to the Released Claims" (*id.* at ¶ 13). BP points out that Cashman stated in its proposed counterclaim attached to its motion for leave to file (#73, Ex. 1 at ¶ 101[11]) that it is a class member to which the broad release of the Settlement Agreement applies. Therefore it is not an entity in the Oil and Gas Industry under § 5.10.2.1.1 of the Settlement Agreement ("Businesses and employers identified on the NAICS codes listed on Exhibit 17 are excluded from the Economic Class."). Thus Cashman's exclusive remedy is to file a claim with the CSSP as it is enjoined from filing the set-off claim here. Furthermore, in its objection (#97 at p.6), Cashman concedes for

---

[11] Paragraph 101 of #73, Ex. 1 states,

On December 21, 2012, United States District Court for the Eastern District of Louisiana issued an Order certifying the Economic and Property Settlement Class and granting final approval of the Economic and Property Settlement Agreement between BP and the settlement class, through which class members such as Cashman could assert business economic loss claims to be administered by the Claims Administrator charged with administering the Settlement Agreement.

Cashman's proposed set-off claim is for "business economic loss under the OPA and/or Economic and Property Settlement Agreement as a result of the Macondo Oil Spill." #73, Ex. 1 at ¶ 107 (Defendant's counterclaim for damages under the OPA and/or the Economic and Property Damages Settlement Agreement as a result of the Macondo Oil Spill flows from the same occurrence giving rise to the contract(s) that is the basis for the captioned matter.").

the first time that it has filed a claim with the Court Supervised
Settlement program, a reason by itself for overruling Cashman's
objection argues BP.

Regarding its new claim of "Moratoria Loss," BP contends that
Cashman's motion does not mention, no less plead, a Moratoria Loss
claim or any other Expressly Reserved Claim, and does not plead any
facts to support any  such claims or its status as an entity in the
Oil and Gas Industry.

As for the limitations bar on Cashman's OPA claim, BP
observes that the Deepwater Horizon incident occurred on April 20,
2010.  The Department of the Interior initially ordered the Mineral
Management Service to issue a moratorium on certain deepwater
drilling activities in the Gulf of Mexico on May 28, 2010, and then
a similar one on July 12, 2010.  The moratoria officially ended on
October 12, 2011.  BP contends that even if Cashman failed to
discover that it had been damaged before this end of the moratoria,
it would have had to file a claim by October 12, 2013, but it
failed to seek leave to do so until December 30, 2014.

Under the presentment requirement of the OPA, 22 U.S.C. §
2713(a), a party must present its claim to the party responsible
for the spill and after the responsible party has denied the claim
or 90 days have passed may that party file a lawsuit.  Cashman has
not alleged that it presented its OPA claim to BP, no less that BP
denied such a claim.  Even if one were presented in Cashman's

motion, it would have been untimely and therefore futile.

## Cashman's Reply (#111)

Cashman agrees that as a class member, it must prosecute some of its claims through the Court Supervised Settlement Program ("CSSP"), but some of its claims are "reserved" to class members and it is up to the Claims Administrator for the CSSP to decide whether Cashman's claims are reserved or fall into the CSSP, subject to BP's rights of appeal and Judge Barbier's judicial supervision. Furthermore, on May 8, 2015 the Claims Administrator issued a Notice to Cashman (#97 Ex. A) updating the status of Cashman's business economic claims and, given that Moratoria Losses "are expressly reserved claims and are excluded from the Economic and Property Damages Settlement Class," stating the following:

> During our review of your claim, we identified indicia of potential Moratoria Losses. Your claim may require additional scrutiny to distinguish excluded Moratoria Losses, if any, from compensable non-Moratoria Losses. . . .

> To implement [§ 38.93 of the Settlement Agreement excluding all Moratoria Losses from the Settlement program] the Claims Administrator established a dedicated special review team to examine all economic loss claims that include potential Moratoria Losses. This special review distinguishes excluded Moratoria Losses from compensable non-Moratoria Losses and may require supplemental information. At present, BP and Class Counsel have not developed the requisite guidance for the Claims Administrator to use in making compensation determinations that adhere to the Moratoria Losses exclusion in the Settlement Agreement. Once the Claims Administrator receives this guidance, the dedicated special review team will resume working on your claim. At that time, we will contact you if we need any additional information or documents.

Cashman argues that it appears that because the Claims Administrator has determined that Cashman has potentially suffered a moratoria loss, it is a real possibility that Cashman's losses are excluded by the CSSP and are "Expressly Reserved" to Cashman. If the damage claim in whole or in part is reserved to Cashman, it must proceed in a Court with jurisdiction, and therefore it seeks to file a counterclaim for "Expressly Reserved" claims here.

As for the OPA's three-year statute of limitations, Cashman contends that because its losses are potentially impacted by BP's present claim against it, they are not fully realized yet and not reasonably discoverable. Furthermore § 7.3.1 of the Settlement Agreement undermines BP's argument that limitations bar Cashman's OPA claim by providing that when Judge Barbier gives preliminary approval of the settlement, "the statutes of limitations applicable to any and all claims or causes of action that could have been or could be asserted by or on behalf of any Economic Class Member are hereby tolled and stayed."[12]   As for the presentment requirement under 33 U.S.C. § 2713, Cashman points to section 7.3.2 of the Settlement Agreement:   Claims with a sum certain and some documentation and/or other proof that are submitted to the

---

[12] BP has urged that the latest date for Cashman to file a claim within the OPA three-year statute of limitations was October 12, 2013 (three years after the moratoria ended on October 12, 2010).  Barbier's order tolling the statute of limitations issued on December 12, 2012, and thus Cashman's claims based on the moratoria would not be time-barred.

Settlement Program shall be deemed to satisfy presentment and all requirements" of that statute.   Cashman has timely submitted a business economic loss claim in the CSSP.   Given this claim and the tolling order, because the Claims Administrator has indicated that some or all of Cashman's claims may be treated as moratorium losses, there is greater reason to allow Cashman's counterclaim to go forward to permit it setoff rights against any recovery BP may have against Cashman.

### Court's Decision

After reviewing the Magistrate Judge's Order (#96), Cashman's objection (#104), BP Exploration & Production Inc.'s ("BP's") response (#104), and Cashman's Reply (#111), as well as the underlying motions and their related briefings, the Court OVERRULES Cashman's objection and sustains the Magistrate Judge's ruling for the following reasons.

Taking BP's objections one by one, regarding its contention that Cashman waived its "Expressly Reserved Claims" argument because it failed to raise them before the magistrate and its reliance on *Cupit*,[13] 28 F.3d at 535 n.5 ("while the [Magistrate Judge] Act provides for de novo review by the district court if timely objections are filed, it does not allow the parties to raise at the district court stage new evidence, argument, and issues that were not presented to the magistrate Judge—'absent compelling

---

[13] *Cupid* was a § 2254 habeas case.

reasons.'"), in *Freeman v County of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998), the Fifth Circuit clarified this quoted statement, distinguishing legal determinations from evidentiary determinations:

> This last citation cannot mean much in the context of *Cupit* or as precedent for this circuit. First, if *Cupit* intended to establish a "compelling reasons" test for any purpose, normally the court would have done so in the text of the opinion rather than in an obscure footnote reference. Second, *Cupit* never mentions or applies that test to the state's newly raised defenses. That is, if the court believed compelling reasons could or could not be given for the state's delay in raising the defenses of exhaustion and procedural bar, the court would have said so. Third, because *Cupit* treats only legal issues, not evidentiary issues, its waiver holding--irrespective of any "compelling reasons" gloss--cannot apply beyond its narrow compass. Fourth, if *Cupit* attempted *sub silentio* to imply that waiver doctrines also apply to challenges to a magistrate judge's evidentiary findings or sufficiency of evidence findings, *Cupit* would conflict with express authority conferred on the district court by statute and rule to "receive further evidence." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). *Cupit* holds only that waiver may bar a party from raising new legal objections to the district court.

The parties agree that Judge Stacy's decision to deny Cashman's motion for leave to amend to add a counterclaim or affirmative defense for setoff, specifically newly argued "Expressly Reserved Claims" for moratoria losses under § 3.3 and "Economic Damage Claims" under § 3.5 of the Settlement Agreement, was a legal decision, and thus BP makes a viable claim for waiver.

The Court also examines BP's challenges to these claims. First, the Court agrees with BP that Cashman has not pleaded in its proposed pleading nor in its motion either of these "Expressly

Reserved Claims," mentioned only in Cashman's objection, nor has Cashman met the procedural requirements for independent claims under the OPA. Thus the question becomes whether Cashman has brought viable "Expressly Reserved Claims" for "Moratoria Losses" under § 3.3 and "Economic Damage Claims" under § 3.5 of the Settlement Agreement with the CSSP.

The Court agrees with BP that Cashman has failed to show that it is an "Entity in the Oil and Gas Industry" to be qualified to bring his new "Expressly Reserved Claims" for "Moratoria Losses" and "Economic Damages" that would be exempt from the Settlement Agreement's broad release. Not only does Cashman claim that it is a class member, to which the Release would apply and bar its claims, but it does not fit the descriptive definition in § 2.2.4.5 of an "Entity in the Oil and Gas Industry" required to be exempt from the Release. *See* footnote 10 of this Opinion and Order. Indeed the various documents in this suit describe Cashman as a Massachusetts-based marine services company that specializes in the rental and sale of barge and marine equipment, that BP contracted with Cashman to provide barges, tug boats, cranes, skimmers, and other equipment to separate crude oil from water in cleaning up the spill in the Gulf of Mexico and from which BP seeks to recover overpayments for the barge rental and Cashman's skimming services during the response. Cashman has never challenged these allegations nor provided evidence that it did anything else.

-18-

For these reasons the Court concludes that Cashman has waived its right to amend to assert the new set-off claims and, even if it had not, that its proposed amendment would be futile because it fails to meet the requirements to be exempt from the Settlement Agreement's broad Release.   Accordingly, the Court

OVERRULES   Cashman's   objection   (#97)   and   sustains   the Magistrate Judge's decision (#96) to deny Cashman's motion for leave to amend.

**SIGNED** at Houston, Texas, this <u>29th</u> day of <u>April</u>, 2016.

 

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE